**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JMB SHIPPING ATB 205, LLC, JMB SHIPPING 220, LLC, and JMB SHIPPING ATB 284, LLC<br><br>                              Petitioners,<br><br>              v.<br><br>UNICO MARINE SERVICES LLC,<br><br>                              Respondent. | Civil Action No. |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE IN PART THE ARBITRATION AWARD OF DAMAGES TO UNICO AND TO CONFIRM AWARD OF DAMAGES TO JMB**

HOLLAND & KNIGHT LLP
Vincent J. Foley
Marie Larsen
787 Seventh Avenue, 31st Floor
New York, NY 10019
vincent.foley@hklaw.com
marie.larsen@hklaw.com

*Attorneys for JMB Shipping ATB 205, LLC, JMB Shipping ATB 220, LLC, and JMB Shipping ATB 284, LLC*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND FACTS AND PROCEDURAL HISTORY ................................4

  A.    Bareboat Charters Between Unico and JMB ...................................................4

    i.    The Parties: Unico Marine Services LLC and JMB Shipping ATB 205, ATB 220, and ATB 284 LLCs .........................................................................4

    ii.   The Base Term and Additional Option Periods.........................................5

    iii.  Payment of Hire and Default Under the BCs .............................................6

    iv.   June – October 2021 - Delivery and Default in Payment of Hire by Unico ..............6

    v.    Unico's Exercise of the First Option Period .............................................8

    vi.   No Exercise of the Five (5) Additional Option Periods.............................9

    vii.  October-November 2021 – Security and Appointment of Arbitrators in a Consolidated Proceeding ........................................................................10

    viii. Arbitration of Disputes Under the BCs ...................................................11

III.  STANDARD OF REVIEW ................................................................................12

IV.   ARGUMENT ......................................................................................................13

  A.    JMB is Entitled to Vacatur of the Panel's ATB 205 and ATB 220 Awards ..............13

    i.    Arbitrators Exceeded Their Authority in Awarding Damages for Unexercised Contractual Option Periods ...............................................13

    ii.   Without a Valid Contract Governing the Extension Periods, Majority Was Not Authorized to Award Damages. ..............................................16

    iii.  Manifest Disregard of the Law by Majority Requires Vacatur ..............17

    iv.   The Panel Demonstrated Bias and Partiality Against JMB .....................22

    v.    The Panel's Award, If Left Undisturbed, Would Have Serious and Adverse Public Policy Consequences.....................................................23

  B.    CONFIRMATION OF ATB 284 AWARD...................................................26

V.    CONCLUSION ...................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & G Coal Corp. v. Integrity Coal Sales, Inc.*,
  565 Fed. Appx. 41 (2d Cir. 2014) ........................................................................27

*Ashland Mgmt. Inc. v. Janien*,
  82 N.Y.2d 395 (1993)..........................................................................................22

*Bleecker St. Tenants Corp. v. Bleeker Jones LLC*,
  16 N.Y.3d 272 (2011)..........................................................................................24

*Certain Underwriting Members of Lloyds of London v. Fla. Dep't of Fin. Servs.*,
  892 F.3d 501 (2d Cir. 2018) ..........................................................................22, 23

*Clarendon Nat. Ins. Co. v. TIG Reinsurance Co.*,
  990 F. Supp. 304 (S.D.N.Y. 1998)...........................................................15, 16, 17

*Companhia De Navegacao Maritima Netumar v. Armada Parcel Service, Ltd.*,
  No. 96 Civ. 6441 (PKL), 1997 WL 16663 (S.D.N.Y. 1997)............................12, 14

*Copragri S.A. v Agribusiness United DMCC*,
  20 CIV. 5486 (LGS), 2021 WL 961751 (S.D.N.Y. Mar. 15, 2021) .....................14

*Cragwood Managers, L.L.C.*, 132 F. Supp. 2d 285 (S.D.N.Y. 2001) .........................13

*D.H. Blair & Co., Inc. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006) ..................................................................................27

*Davis v. Chevy Chase Fin. Ltd.*,
  667 F.2d 160 (D.C. Cir. 1981)..............................................................................14

*E. Coast Res. LLC v. Town of Hempstead*,
  707 F. Supp. 2d 401 (E.D.N.Y. 2010)..............................................................17, 21

*Executone Info. Sys., Inc. v. Davis*,
  26 F.3d 1314 (5th Cir. 1994) ...............................................................................18

*Florasynth, Inc. v. Pickholz*,
  750 F.2d 171 (2d Cir. 1984) .................................................................................27

*Garrity v. Lyle Stuart, Inc.*,
  40 N.Y.2d 354 (1976)...........................................................................................25

*Hi-Shear Tech. Corp. v. United States*,
  356 F.3d 1372 (Fed. Cir. 2004).............................................................................21

*Ibar Ltd.*, No. 97 Civ. 8592(LMM), 2003 WL 2012400 (S.D.N.Y. May 2, 2003) ......................13

*In Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
    552 U.S. 576 (2008) ................................................................................................................12

*Inter-City Gas Corp. v. Boise Cascade Corp.*,
    845 F.2d 184 (8th Cir. 1988) .................................................................................................14

*Interfilm, Inc. v. Advanced Exhibition Corp.*,
    249 A.D.2d 242 (1st Dep't 1998).............................................................................................26

*In re Johnson*,
    864 N.Y.S.2d 873 (Sup. Ct. 2008) ..........................................................................................12

*Lava Trading Inc. v. Hartford Fire Ins. Co.*,
    No. 03 Civ. 7037(PKC), 2004 WL 943565 (S.D.N.Y. May 3, 2004)....................................17

*Livermore-Johnson (N.Y.S. Dep't of Corr. & Cmty. Supervision)*, 155 A.D.3d
    1391 (3d Dep't 2017) ..............................................................................................................26

*Loc. 1199, Drug, Hosp. & Health Care Emps. Union v. Brooks Drug Co.*,
    956 F.2d 22 (2d Cir. 1992) .....................................................................................................13

*McDaniel v. Bear Stearns & Co., Inc.*,
    196 F. Supp. 2d 343 (S.D.N.Y. 2002).....................................................................................13

*Mehta v. N.Y. City Dept. of Consumer Affairs*,
    162 A.D.2d 236 (1st Dep't 1990).............................................................................................22

*Mktg. & Mgmt. Info., Inc. v. United States*,
    62 Fed. Cl. 126 (2004).............................................................................................................20

*Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters*,
    748 F.2d 79 (2d Cir. 1984) .....................................................................................................22

*N.Y. Off. for People with Dev. Disabilities (Civil Serv. Emps. Ass'n, Inc., Local 1000,*
*AFSCME, AFL-CIO)*, 193 A.D.3d 1305 (3d Dep't 2021) ........................................................24

*Nutrition 21, Inc. v. Wertheim*,
    150 Fed. Appx. 108 (2d Cir. 2005) .........................................................................................18

*Ottley v. Schwartzberg*,
    819 F.2d 373 (2d Cir. 1987) ...................................................................................................14

*Renner v. Chase Manhattan Bank*,
    No. 98 CIV. 926(CSH), 2000 WL 781081 (S.D.N.Y. June 16, 2000)....................................17

*Robert E. Derecktor, Inc. v. M/Y Indep.*,
  15 CV 8257 (VB), 15 CV 9372 (VB), 2021 WL 199289 (S.D.N.Y. Jan. 20,
  2021) ................................................................................................................ 13

*Schlaifer Nance & Co. v. Est. of Warhol*,
  764 F. Supp. 43 (S.D.N.Y 1991) .................................................................... 14

*Schwartz v. Merrill Lynch & Co., Inc.*,
  665 F.3d 444 (2d Cir. 2011) ........................................................................... 18

*Sorial v. Robinhood Fin., LLC*,
  24-3114, 2025 WL 3152622 (2d Cir. Nov. 12, 2025) ...................................... 18

*Sprinzen v. Nomberg*,
  46 N.Y.2d 623 (1979) ...................................................................................... 24

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,
  559 U.S. 662 (2010) ............................................................................ 16, 17, 18

*Taussig v. Clipper Grp.*,
  13 A.D.3d 166 (1ˢᵗ Dep't 2004) ...................................................................... 14

*United Fed'n of Teachers, Loc. 2 v. Bd. of Educ. of the City Sch. Dist. of the City
  of N.Y.*,
  1 N.Y.3d 72 (2003) .......................................................................................... 24

*Weiss v. Sallie Mae, Incorp.*,
  939 F.3d 105 (2d Cir. 2019) ........................................................................... 18

*Wrap-N-Pack, Inc. v. Kaye*,
  528 F. Supp. 2d 119 (E.D.N.Y. 2007) ............................................................. 25

**Statutes**

CPLR § 7511(b)(1)(iii) ............................................................................................ 13

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* .................................................. *passim*

9 U.S.C. § 10(a)(4) ............................................................................................ 13, 17

9 U.S.C. § 11(a) ...................................................................................................... 27

## I.    INTRODUCTION

On October 12, 2021, an arbitration proceeding was commenced pursuant to Society of Maritime Arbitrators Inc. ("SMA") Rules[1] and Clause 24 of the respective bareboat charters ("BCs") for the ATB 205, 220 and 284 (individually referred to as "ATB 205," "ATB 220," and "ATB 284," and collectively the "Vessels").[2]  JMB Shipping ATB 205, LLC; JMB Shipping ATB 220, LLC; and JMB Shipping ATB 284, LLC (collectively, "JMB") asserted claims in the consolidated arbitration against Unico Marine Services LLC ("Unico Marine" or "Unico") for unpaid hire with respect to all three ATBs, and mitigation damages resulting from Unico Marine's breach of the Bareboat Charters ("BCs") including the early redelivery of ATB 284.

Unico Marine, through its principal Riccardo Valentini, negotiated the BCs with the Bouchard Transportation Company ("Bouchard") bankruptcy estate.  Unico Marine, a new company with no history operating Jones Act vessels, made a risky business decision to charter three vessels previously operated by the now bankrupt tug and barge operator.  ATB 220 and ATB 284 were delivered on June 28, 2021, and almost immediately, Unico Marine was in breach of its contractual obligations, failing to pay hire when due.  On August 1, hire was not paid when due, and notice was sent to Unico setting forth the expectation that monthly hire should be paid promptly on the first of each month in accordance with the unambiguous terms of the BCs.

Following JMB's voluntary assumption of the BCs in the bankruptcy, Unico Marine's breaches and delay tactics continued and significantly worsened.  On September 1, 2021, hire was not paid when due. Hire was not received by JMB until September 10, 2021, well after the deadline set forth in the BCs and expiration of the contractual cure period.  It became clear during discussions between the parties that Unico Marine lacked sufficient cash flow to meet its

---

[1] https://smany.org/pdf/SMA-arbitration-rules.pdf (2018 version).
[2] The Bareboat Charters for ATB 205, ATB 220, and ATB 284 are attached to Foley Declaration as Exs. 2-4.

obligations under all three BCs due to its inability to profitably operate, and that Unico was relying on highly speculative employment of the Bouchard tainted Vessels to generate the cash flow necessary to pay charter hire. But Unico Marine, an inexperienced Jones Act operator without the required experience, reputation or vetting as an operator, struggled to employ the Vessels. By late September, Unico Marine recognized its miscalculations, and sought to extract itself from the BCs and mitigate its ongoing losses by seeking a subcharter of the Vessels to third party operator Centerline Logistics Corporation ("Centerline"). By early October 2021, Unico Marine accepted that operation of the ATBs was causing losses which would not be recoverable, and that Unico had very dim prospects for the ATBs becoming profitable. To stem its losses, Unico pursued a "Hail Mary" deal to remove itself from responsibility for daily operations and instead collect a monthly fee from Centerline. However, the deal was rejected by Centerline, and instead Unico Marine voluntarily chose to redeliver the ATB 284 on October 7, 2021, breaching the charter and causing damage to JMB. By October 8, with early redelivery already effected on ATB 284, and Unico in default of hire payments on ATB 220 and ATB 205, JMB exercised its contractual right under the BCs to retake possession of the other two Vessels and terminate the charter parties with Unico Marine.

Despite Unico Marine's serious business and operational missteps related to the Vessels, and its continued breach of the BCs, it is only after termination of the charter parties that Unico Marine fabricated, on an *ad hoc* basis, various defenses and offensive claims related to the Vessels. The Panel majority exceeded its authority by disregarding the unambiguous contract terms and speculated, despite concrete evidence to the contrary, that it was not reasonable to expect Unico to adhere to the requirements of the contract extension clauses (despite at the same time finding JMB liable for failing to strictly adhere to contractual notice requirements for termination of the BCs).

2

Instead, the Panel majority speculated that Unico "would have" exercised multiple options periods to extend the terms of ATB 205 and ATB 220, but for JMB's repossession of the Vessels.

The majority erred by awarding Unico lost profits for five unexercised six month option periods under the ATB 205 and ATB 220 BCs, rather than limiting recovery to the single option period Unico actually did exercise after the Vessels were repossessed by JMB.[3]  The majority's reliance on the unexercised options to inflate the award of damages ignores the scope of parties' agreement, the plain language of the BCs, and is contrary to long-standing New York law.  Unico never committed itself or JMB to a three-year contract, yet the Panel saw fit to award a windfall for a three-year period of hypothetical operational excellence contrary to Unico's history of significant losses before the Panel.  The Panel majority's blatant disregard of their mandate as prescribed by the express and binding terms of the BCs materially changed the agreement entered by the parties and should be vacated. Furthermore, the Panel unanimously applied the strict terms of the contracts when assigning fault to JMB (concerning withdrawal and termination requirements), but the majority blatantly ignored the express terms of the contracts when awarding Unico a windfall, demonstrating clear bias by the majority.  The enforcement of unexercised rights by the majority rendered its award invalid and unenforceable against JMB.  As more fully set out below, the Awards against JMB 205 and JMB 220 must be vacated.[4]

---

[3] JMB disputed the validity of Unico's exercise of the first extension as untimely but the Panel ruled otherwise.  Award at pp. 68-71.

[4] On November 13, 2025, the Panel issued a ruling made up of a consolidated discussion of the merits and legal holdings of the Panel majority (collectively, the "Award") but issued three separate one-page awards with respect to each of the disputes (hereinafter the "205 Award", "220 Award" and "284 Award").  Award at 78-80.  The Award also contains a dissent from arbitrator Tsimis at pp. 81-86. The "Award" is attached to the Foley Decl. Ex. 1.

Notwithstanding the Panel's error concerning ATBs 205 and 220, JMB respectfully submits that the corrected Award[5] issued with respect ATB 284 (Award at p. 80) summarizing damages for Unico's early redelivery of ATB 284 should be confirmed.

## II.    BACKGROUND FACTS AND PROCEDURAL HISTORY

### A.  Bareboat Charters Between Unico and JMB

#### i.    The Parties: Unico Marine Services LLC and JMB Shipping ATB 205, ATB 220, and ATB 284 LLCs

JMB Shipping LLC ("JMB Shipping") is the parent entity of individual limited liability companies for each of the Vessels.  As a result of a Bankruptcy ordered public auction of Bouchard assets in June 2021, JMB Shipping acquired 29 vessels, including the ATB 205, ATB 220, and ATB 284 which were already bareboat chartered to Unico in May 2021. Award at p.2.

Unico's parent, Unico Commodities LLC, traded in petroleum products buying, selling, and chartering vessels to deliver them to customers. Award at p. 2.  At the time it entered the BCs in May 2021, Unico was a start-up or "new" operator seeking entry into the highly competitive U.S. flag (Jones Act) oil products transportation market.[6]  Award at p. 84.  The Jones Act oil products market was dominated by seasoned operators with substantial cash flow, market presence and established reputations in their operations including Vane Brothers and Centerline. Award at p. 84.  Unico's start-up status was a far cry from this level of operation.

---

[5] The Award for ATB 284 at p. 80 has a clerical error in Paragraph No. 2, awarding Unico interest and attorneys' fees for JMB's award.  The corrected language should read: "The Panel also awards ***JMB*** interest… Additionally ***JMB*** is awarded recovery of its reasonable attorney's fees and expenses…" (emphasis added).  This is reflected in the substantive portion of the Award at p. 60-62.

[6] At the time Unico entered the BCs, the ATBs were tainted with the negative stigma associated with operation by the Bouchard fleet of vessels.  Award at p. 68.  Unico demonstrated its weakness as an operator through its inability to employ the assets, and multiple operational missteps with the Vessels including the inability to pay hire when due.  Unico admitted its lack of experience and a desire to be relieved of operator responsibility by having Centerline takeover operations as of October 1. Award at p. 85.

### ii.    The Base Term and Additional Option Periods

In May 2021, Unico entered into BCs with Bouchard, committing itself to a six-month term.  Since Unico was a start-up business with uncertain prospects and unstable cash-flows, it negotiated the BCs for ATB 205 and ATB 220 with option periods to limit its exposure if things didn't work out.[7]  "Unico wanted to keep its 'options' open to not be burdened or obligated with the bareboat charter in case business did not go the way it had hoped it would go." Award at p. 84.

Paragraph 5 of the ATB 220 BC, entitled "Term," provided: "The base term of this Agreement shall be from the date of delivery (estimated to be on or about June 1, 2021) for a period of approximately six months ending on November 30, 2021." Foley Decl. Ex. 2, BC at p. 2.  The first option period for ATB 220 from December 1, 2021 to May 31, 2022,[8] was subject to Unico giving "notice to OWNERS of its intention to exercise such option not later than forty-five days before the end of the then existing base period." *Id.* Unico's exercise of the first option period required written notice. For ATB 205, notice was required 45 days before December 31, 2021 (*i.e.*, on or before November 16, 2021), and for ATB 220 notice was required 45 days before the end of the existing period on or before November 30, 2021 (*i.e.*, October 16, 2021).  Award at pp. 64, 67.

The BCs at Clause 5(c) allowed for five "Additional Option Periods," each for a period of six months.  The Additional Option Periods were "subject to CHARTERER providing written notice of its intention to exercise such option not later than forty-five days before the end of the then existing period."  Foley Decl. Exs. 2,4, BCs at p. 2  Absent written notice from Unico to commit itself to the Additional Option Periods, the base term of the respective BC expired six

---

[7] "This specifically negotiated base term [of six months] is a commercial reality that cannot be disregarded in the assessment and analysis of this dispute." Award at p. 83.

[8] The Panel found the "December 31, 2021" date in the ATB 220 BC to be a "clerical/typographical error," and found: "We find that the base term of the ATB 220 BC was to be November 30, 2021, and we adopt that date to modify damages calculated by Johnsen for ATB 220." Award at p. 72.

months from the date of delivery in June 2021. Notably, there is nothing in the BCs that prohibited Unico from exercising all six option periods in advance, provided that the first option was exercised forty-five days before the end of the base term. *Id*.

### iii.    Payment of Hire and Default Under the BCs

Under Paragraph 6 of the BCs, Unico was obligated to pay monthly hire in advance on the first day of each month, as reflected in the provision governing ATB 220: "For the base term and the first option period, if exercised by CHARTERER, of this AGREEMENT, Charter Hire shall be $6,500.00 USD per calendar day or part thereof, payable monthly in advance on the first day of each month ..." Foley Decl. Ex. 2, BC at 2.  Paragraph 6(a) also required Unico to "pay hire due to OWNERS punctually in accordance with the terms of this AGREEMENT." *Id*. at 2-3.

### iv.    June – October 2021 - Delivery and Default in Payment of Hire by Unico

On August 5, 2021, JMB assumed the BCs as "OWNERS" after winning its bid for multiple vessel assets via an auction in the Bouchard bankruptcy and its voluntary assumption of the BCs.  Award at p. 2.  The ATB 220 was delivered to Unico on June 28/29, 2021. Award at p. 15.  The ATB 205 was delivered to Unico on August 18, 2021. Award at p. 16. Almost immediately, Unico missed the deadline for the first payment of hire in September, making a late payment on ATB 205 on September 3, and no payment for ATB 220 and 284, requiring JMB to give notice of payment default on September 8. Award at p. 26.  Unico claimed that the failure to make prompt payments was due to cash flow issues as Unico "had some delay with payments coming from our clients." Award at p. 25.  After several email exchanges with Unico, JMB received the September hire payment for ATBs 220 and 284 on Friday, September 10, 2021—per the language of Paragraph 6(a), the payment was past due, in breach of the BCs.  On September 14, 2021, ATB 205 experienced a thermal oil heating issue (determined by the Panel to be a latent

6

defect) for which Unico declared the vessel offhire. Award at pp. 65-66. Unico declined to pay hire for ATB 205 based on the offhire claim. Award at p. 67.

With the next monthly installment for all three ATBs due on October 1, 2021, Unico again failed to make punctual payment of hire. JMB promptly notified Unico of the default and demanded payment within the cure period of three business days or close of business on October 6, 2021. Award at p. 63. On October 7, Unico redelivered ATB 284 to JMB breaching and terminating the BC. As for ATB 205 and ATB 220, JMB sent a notice letter to Unico through counsel demanding Unico to pay the hire due on the ATBs or agree to wind down the BCs by October 6. Foley Decl. at Ex. 6; Award at pp. 63-65.

With no payment received from Unico by the cure deadline of October 6, 2021, Unico was (again) in breach of the BCs, and JMB took the steps necessary to retake possession by arrest of ATBs 220 and ATB 205 for Unico's default of failure to pay hire. Award at p. 64. Unico was found by the Panel to be in default of its payment obligation to ATB 220 as of close of business on October 6 when Unico failed to make punctual payment of hire to JMB. Award at p. 64, fn. 2. The Panel also conceded that JMB was entitled under the ATB 220 BC to terminate and to withdraw the Vessels from Unico's service due to non-payment of hire. Award at p. 63. However, because JMB did not provide what the Panel deemed to be "proper" notice of intent to withdraw and terminate the ATB 220 BCs (applying a standard of strict adherence to the BCs' terms), the Panel found JMB's notice, arrest and repossession to be ineffective to terminate the BC. Award at p. 64. As for the ATB 205, similar to the finding for ATB 220, the Panel found that JMB did not give proper notice of termination, such that the BC for ATB 205 was improperly terminated and the ATB 205 remained "off hire" until completion of repairs to the thermal oil heating system. Award at p. 67. The Panel faulted JMB's subsequent steps to retake possession by arrest of ATB

7

205 and ATB 220 and found that the BCs were not terminated but continued "in effect" (allowing Unico to exercise an option to extend the BCs for ATB 205 and ATB 220 by six months). Award at p. 67.

### v.    Unico's Exercise of the First Option Period

After defaulting multiple times on its payment obligations for ATB 205 and ATB 220 and JMB's subsequent arrest and repossession of the Vessels, Unico sent an email notice to exercise the option period on October 10, 2021 (and allegedly, notice by mail on November 12, 2021) expressing its intention to exercise <u>only</u> the first option period of six months for both ATB 205 and ATB 220.  Award at pp. 67, 81-82.

At the time Unico sent its notice of intent to exercise the first option period, JMB had been in possession of ATB 205 and ATB 220 for a full month during which it was mitigating damages by correcting maintenance deficiencies and readying the Vessels for replacement charters to Centerline.  Award at p. 69.  The Panel referred to this period as a "state of limbo." [9]  Despite the ATBs being in JMB's possession with no realistic subsequent charter period for Unico and absolutely no risk to Unico of being required to pay hire for the optional period, Unico sought to exercise only the first option period under the two BCs.  Unico's notice to add a fictional additional term of six months for ATB 220 and ATB 205 was solely intended to create leverage to claim damages (and not an intention to be bound to an additional option period of six months).  Although this contractual extension was exercised following termination of the BCs by JMB, the majority found that Unico's questionable notice to exercise the first option period was effective to extend the BCs for ATB 205 and ATB 220 by six months because the BCs were not terminated but continued "in effect."  Award at p. 69.

---

[9] "JMB having improperly terminated the ATB 205 and [the] ATB 220 BCs and having on October 7/8 2021 arrested and repossessed ATB 205 and ATB 220, the ATBs were effectively in a state of limbo." Award at p. 69.

### vi.    No Exercise of the Five (5) Additional Option Periods

At any time before, during, or after the retaking of possession of ATBs 220 and 205, Unico could have sent JMB written notice to exercise the five (5) Additional Option Periods in Paragraph 5(c) of the BCs.  The dissenting arbitrator commented on this point:

> Moreover, when Unico Marine sent its November 12, 2021 messages/letters, the BCs had already been terminated by JMB and these consolidated arbitration proceedings had already been commenced. Yet, Unico Marine nevertheless saw fit to do so [exercise its first option] to protect its option rights for the January 1, 2022 to June 30, 2022 period under the two BCs, and in accordance with the plain language of Clause 5(a) and (c) and the requirement to provide 45 days' advance notice before the end of the existing base charter period.

Award at pp. 81-82.  Unico did not *ever* extend the BC beyond the first option period: "no other writings were ever sent or communicated by Unico Marine to JMB regarding any of the other option periods identified in Clauses 5(c) of the two BCs."  Award at p. 82.  None of these additional periods were exercised by Unico, and none became binding upon JMB.

The majority also found: "On November 22, circumstances changed. JMB bareboat chartered ATB 205 and [ATB] 220 to Centerline with ATB 220 on hire to Centerline [on] December 18, 2021 and ATB 205 on hire to Centerline [on] January 7, 2022."[10]  Award at p. 69. The majority considered this "changed circumstance" to relieve Unico from the unambiguous contractual requirement "to provide written notice to extend the BCs into five Additional Option periods."[11]  The dissenting arbitrator declined to disregard the mandatory contractual notice: "Without such notice, there is no valid contractual predicate under the express language of the BCs

---

[10] It defies logic for the Panel majority to rely on this "changed circumstance" to relieve Unico of the notice requirements for options 2-6 when the risk to Unico of actually having to perform the option was significantly less after charter of the Vessels to Centerline.

[11] In contrast, the dissenting arbitrator found: "It is my position that Unico Marine is not entitled to damages for the option periods that were never exercised as required by the express terms of the governing bareboat charter parties." Award at p. 81.

9

for Unico Marine to request an award for damages for any subsequent option periods." Award at p. 82.

The majority sought to justify its finding with speculation as to reasons for Unico's failure to exercise the option periods: "A majority of the Panel believes and finds that had JMB not wrongfully terminated the ATB 205 and 220 BCs and had JMB not then repossessed ATBs 205 and 220 so that the ATBs thereby would remain under charter to Unico, Unico having effectively exercised the first option would have exercised the remaining five six-month options available to Unico under paragraph 5(c) of the BCs." Award at p. 70. This unfounded speculation ignores the reality that Unico – who had experienced nothing but significant losses and had already returned one vessel – exercised the first option after, in the Panel's unanimous determination, JMB had terminated the BCs. It also contradicts the Panel's own conclusion that BCs were not terminated but continued "in effect," which was how the Panel deemed the first option exercise to be valid (if they were in effect for the exercise of the first period, then they must have been in effect for the remaining options). Finally, the majority's rationale is illogical, as exercise of the options after the Vessels were rechartered to Centerline would expose Unico to significantly less potential liability if it were found liable for breaching the BCs; when exercising the first option, Unico had to assume it could potentially be liable for the entire charter hire for six months, but once the Vessels were rechartered to Centerline, the potential damages were significantly reduced. Yet Unico chose not to exercise the options despite this reduced potential liability.

### vii.    October-November 2021 – Security and Appointment of Arbitrators in a Consolidated Proceeding

On October 12, 2021, Unico appointed Leroy Lambert as an arbitrator for disputes relating to ATB 205 and ATB 220.  Award at p. 3.  On October 14, JMB appointed George Tsimis as arbitrator for disputes under the BCs for ATB 205, ATB 220, and ATB 284.  *Id.*  On October 28,

through newly appointed New York lawyers, Lambert stepped down as arbitrator, and Unico appointed a replacement arbitrator, Louis Sheinbaum.  On October 29, 2021, Dick Corwin informed Unico and JMB that he had accepted an appointment as the third arbitrator for ATB 205, ATB 220, and ATB 284.  *Id.* The arbitrators made disclosures and as of December 2, 2021, the panel for all three arbitrators were formed.  On December 14, the parties agreed to consolidate the three arbitrations pursuant to Section 2 of the SMA Rules. *Id.*

Instead of challenging the arrest of ATB 220 and ATB 205 in October-November 2021 while the matter was pending before federal courts in Florida and Louisiana, Unico agreed to release the units to JMB in exchange for security for claims under the BCs.  JMB posted security in the amount of $8.4 million for ATB 220 and $5.6 million for ATB 205.[12]  Award at p. 4.

It is notable that Unico did not challenge the vessel arrests, as it reflects the reality that Unico did not actually seek in good faith to re-take possession and operate the ATB 205 or ATB 220 for either the first exercised extension period, or any of the subsequent extension periods.

### viii.    Arbitration of Disputes Under the BCs

With the understanding that all rights were reserved during the "state of limbo" period, the parties proceeded to arbitrate disputes under the three BCs from May 2022 through June 2024.  Award at pp. 5-13.  As part of its reply brief,[13] Unico submitted additional exhibits pertaining to the notice to extend the first option period on ATB 205 and ATB 220.[14]  The Panel denied JMB's request to exclude as untimely submitted Appendices 1-2 from the arbitral record. Foley Decl. Ex. 7.

---

[12] The Panel mistakenly refers to security for ATB 205 and ATB 220 in the amounts of $5.6 million and $8.4 million as provided by Unico.  Award at p. 4.  JMB provided this security in October, and Unico agreed to release it in May 2022.

[13] Award at p. 13.

[14] Prior to this untimely submission of evidence after close of the evidentiary proceedings, no evidence of notification by mail (as required by the contract) had previously been submitted in the arbitration.

In November 2024, the Panel requested the parties to provide supplemental briefing concerning options to extend under the BCs and calculation of damages. Award at p. 13. In December 2024, the parties submitted supplemental main and reply briefs. Award at p. 14. Thereafter, the arbitrators met and deliberated from December 2024 with intermittent status updates to the parties until issuance of the consolidated ruling and Award on November 13, 2025.[15] *Id.*

## III.    STANDARD OF REVIEW

The Court's deference to an arbitrator's decision is not absolute; it is conditioned upon the arbitrator's adherence to the boundaries established by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* Although review of arbitration awards is deferential, a court "should not merely rubber-stamp the arbitrator's actions." *Companhia De Navegacao Maritima Netumar v. Armada Parcel Service, Ltd.*, No. 96 Civ. 6441 (PKL), 1997 WL 16663, at *3 (S.D.N.Y. 1997); *see also, e.g., In re Johnson*, 864 N.Y.S.2d 873, 888 (Sup. Ct. 2008) (noting that an arbitrator's authority may be broad, but it is not "unlimited"). Under Section 9 of the FAA, a court must confirm an award unless it is vacated on the grounds prescribed in Section 10. *In Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 577 (2008). Section 10(a) of the FAA provides four exclusive grounds for vacating an arbitration award:

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of them;

(3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

[15] *See* nt. 3, *supra*.

9 U.S.C. § 10(a). A party seeking to vacate an arbitration award bears the burden of proof. *In re Cragwood Managers, L.L.C.*, 132 F. Supp. 2d 285, 287 (S.D.N.Y. 2001).

In addition, as "judicial gloss" on the FAA's grounds for vacatur, vacatur is also required where an arbitrator has acted in manifest disregard of the law. *Robert E. Derecktor, Inc. v. M/Y Indep.*, 15 CV 8257 (VB), 15 CV 9372 (VB), 2021 WL 199289, at *3 (S.D.N.Y. Jan. 20, 2021); *see also McDaniel v. Bear Stearns & Co., Inc.*, 196 F. Supp. 2d 343, 351 (S.D.N.Y. 2002). The party seeking vacatur bears the burden of demonstrating this manifest disregard. *In re Ibar Ltd.*, No. 97 Civ. 8592(LMM), 2003 WL 2012400, at *2 (S.D.N.Y. May 2, 2003). That burden is satisfied when an arbitrator understood and correctly stated the law but proceeds to ignore it. *Id*.

## IV.    ARGUMENT

### A.    JMB is Entitled to Vacatur of the Panel's ATB 205 and ATB 220 Awards

#### i.    Arbitrators Exceeded Their Authority in Awarding Damages for Unexercised Contractual Option Periods

Under the FAA, an arbitration award may be vacated where "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4); *see also* N.Y. CPLR § 7511(b)(1)(iii) (same).  To consider whether arbitrators exceed their authority under §10(a)(4), the court must "determine first whether the arbitrator acted within the scope of his authority, and second whether the award draws its essence from the agreement or is merely an example of the arbitrator's own brand of justice."  *Loc. 1199, Drug, Hosp. & Health Care Emps. Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992).

The core inquiry is "whether the arbitrator had the power ... to reach a certain issue…." *Copragri S.A. v Agribusiness United DMCC*, 20 CIV. 5486 (LGS), 2021 WL 961751, at *4 (S.D.N.Y. Mar. 15, 2021) (*quoting Jock v. Sterling Jewelers Inc.*, 942 F.3d 617, 622 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 255 (2020)). An arbitrator's authority is necessarily limited by the parties' contract. *See, e.g.*, *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987); *Davis v. Chevy Chase*

13

*Fin. Ltd.*, 667 F.2d 160, 165 (D.C. Cir. 1981) (finding that arbitrators are "permitted to decide only those issues that lie within the contractual mandate."); *Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184, 187 (8th Cir. 1988) ("the arbitrator may not disregard or modify unambiguous contract provisions.") (citations omitted). An arbitrator's interpretation must be grounded in the agreement's explicit terms: "the arbitrator cannot disregard or modify unambiguous contract provisions." *In re Arb. between Carina Intern. Shipping Corp.*, 961 F. Supp. 559, 565 (S.D.N.Y. 1997) (citations omitted).

Vacatur is warranted "'when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice.'" *Copragri S.A.*, 2021 WL 961751, at *5 (*citing Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). Where arbitrators decide issues outside their contractual authority, the award is unenforceable because it is "made in excess of authority, and a court is precluded from giving effect to such an award." *Davis*, 667 F.2d at 165 (citations omitted); *see also Taussig v. Clipper Grp.*, 13 A.D.3d 166, 167 (1st Dep't 2004); *Schlaifer Nance & Co. v. Est. of Warhol*, 764 F. Supp. 43, 46 (S.D.N.Y 1991) (*citing Davis*, 667 F.2d at 165 (finding arbitrator exceeded his authority where the arbitration clause limited his authority to issue of determining value of shares)); *Clarendon Nat. Ins. Co. v. TIG Reinsurance Co.*, 990 F. Supp. 304, 311 (S.D.N.Y. 1998) (holding that the arbitrators exceeded their authority by awarding damages in express contradiction of the parties' contract).

Here, the Panel majority exceeded their authority by their disregard of the unambiguous contractual requirements to provide written notice of intent to exercise the option periods 2-6 for ATB 205 and ATB 220. Without an enforceable contract in effect during the extension periods— a fact conceded by the majority—the arbitrators have no legal basis or authority to award damages

to Unico. Award at p. 70. Accordingly, the Award pertaining to ATBs 205 and 220 for extension periods 2-6 must be vacated.

Despite the majority conceding that Unico had indeed not exercised its options as required, it adopted a rationale that, "it [is] unrealistic to expect, much less require, Unico to provide notices to exercise options 2 through 6 to recover damages for the option periods." Award at p. 70. The Panel's rationale that the notice requirements of a contract are obviated by the commencement of arbitration or mitigation charter of the Vessels finds no support in maritime law, New York contract law or the parties' agreements. The majority's decision to waive Unico's notice requirement for options 2-6 required the majority to speculate that Unico "having effectively exercised the first option, ***would have exercised*** the remaining five six-month options available to Unico under paragraph 5(c) of the BCs." Award at p. 70 (emphasis added). The Panel's rationale is not only premised on a speculative leap, but it ignores the mandatory notice requirement, and Unico's demonstrated ability to comply with notice. Repossession of the Vessels by JMB did not prevent Unico from exercising the first option period; the Panel unanimously found that Unico had exercised the first option after repossession. Unico made the business decision to agree to a six-month base term, with a series of options of which only the first option was exercised. This fact alone eviscerates the Panel's conclusion that it was "unrealistic to expect" similar notices for subsequent options.

The Panel ignored that: (i) each option period required an independent business decision based on then-current market conditions and Unico's financial capacity and ability to operate the Vessels; and (ii) Unico made a deliberate choice not to send notices for options 2-6 for whatever reason. Importantly, the deadlines to exercise additional option periods would all have expired during the pendency of the arbitration. Excusing five separate conditions precedent based solely

on the Panel's view that it would be "unrealistic to expect" Unico to exercise the option periods transforms the majority from appointed arbitrators into contract rewriters, and it ignores the plain reality that exercising the options was less risky for Unico after the Vessels had been rechartered to Centerline.[16][17]

Arbitrators may not disregard unambiguous mandatory contractual provisions to achieve what they perceive is a fair result. By waiving the BCs' 45-day notice to exercise the Additional Option Periods, the majority engaged in precisely the type of arbitrary decision-making that exceeded arbitral authority, substituting its own notions of fairness for the parties' negotiated terms. *See Clarendon Nat'l Ins. Co.*, 990 F. Supp. at 311; *see also Stolt-Nielsen S.A.*, 559 U.S. at 672. The Award of damages for unexercised Additional Option periods 2-6 must be vacated as it rests entirely on unfounded speculation about future conduct (which is contradicted by Unico's previous actions) and an impermissible rewriting of express contractual conditions precedent that remained fully capable of performance.

### ii. Without a Valid Contract Governing the Extension Periods, Majority Was Not Authorized to Award Damages.

Because the option periods were not exercised by Unico, the BCs' expired at the end of the then existing term, and no contract existed for subsequent periods. "A prerequisite to recovering such damages, however, is the existence of a valid contract." *E. Coast Res. LLC v. Town of Hempstead*, 707 F. Supp. 2d 401, 409 (E.D.N.Y. 2010) (citing *Verzani v. Costco Wholesale Corp.*,

---

[16] The Panel majority's rationale that the charter of the Vessels to Centerline somehow excused Unico's contractual requirements is undercut by the reality that, economically, exercising options 2 through 6 was less risky for Unico since the Vessels were now being operated by someone else. Unico exercised the first option after repossession and the commencement of arbitration but prior to Centerline taking possession; after this, the potential damages for Unico in the subsequent option periods were mitigated, but Unico still did not exercise the options. Plainly, the rechartering of the Vessels to Centerline made it easier for Unico to exercise the options as it exposed Unico to drastically reduced potential liability.

[17] Furthermore, the majority's speculation also has no grounding in economic reality, as Unico only demonstrated operating losses while in possession of the Vessels.

641 F. Supp. 2d 291, 298 (S.D.N.Y. 2009)); *Lava Trading Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7037(PKC), 2004 WL 943565, at *2 (S.D.N.Y. May 3, 2004) ("[T]here was no contract, and therefore no benefit of the bargain, to enforce."); *Renner v. Chase Manhattan Bank*, No. 98 CIV. 926(CSH), 2000 WL 781081, at *19 (S.D.N.Y. June 16, 2000) (stating that "without a contract there can be no breach") (citations omitted).

This Court should be guided by the dissent issued by Arbitrator Tsimis, who recognized that the majority must properly adhere to applicable law. Arbitrator Tsimis systematically dismantles the holdings of the majority, noting the lack of legal basis for the issuance of damages for the option periods. Award at p. 82.

> Consistent with black letter law, the language of the two BCs is to be given its ordinary meaning and the express language of Clause 5(c) makes these subsequent option periods for Unico Marine to use and operate the vessel subject to its giving notice to JMB Shipping. Aside from the first option periods for the two BCs, Unico did not satisfy the requirement of giving 45 days' advance notice of its intention to exercise the other option periods. Without such notice, there is no valid contractual predicate under the express language of the BCs for Unico Marine to request an award for damages for any subsequent option periods.

*Id.* The dissent also underscored that the majority's assumption that Unico "would have" exercised all options lacks any factual or legal foundation (*id.* at pp. 82-84), confirming that the award rests entirely on the type of speculation that exceeds arbitral authority under *Stolt-Nielsen* and *Clarendon*. The majority's creation of an exception to unambiguous notice requirements constitutes impermissible overreach. Accordingly, pursuant to 9 U.S.C. § 10(a)(4), the Court must vacate the Award.

### iii.    Manifest Disregard of the Law by Majority Requires Vacatur

The Second Circuit recognizes "manifest disregard of the law" as a judicial gloss on § 10(a). *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011). Stated otherwise, vacatur is appropriate where the record demonstrates that the arbitrator knew the governing law

and consciously chose to ignore it. *Sorial v. Robinhood Fin., LLC*, 24-3114, 2025 WL 3152622, at *2 (2d Cir. Nov. 12, 2025). To vacate an award for manifest disregard, the movant must show: (1) the arbitrator was aware of a clearly governing legal principle yet refused to apply it or ignored it altogether; and (2) the disregarded law was "well defined, explicit, and clearly applicable" to the dispute. *Id.*; *Nutrition 21, Inc. v. Wertheim,* 150 Fed. Appx. 108, 109 (2d Cir. 2005) (citing *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 263 (2d Cir. 2003)).

### 1. The Panel Majority Disregarded Notice Required To Exercise the Option Periods

Arbitrators exceed the bounds of permissible decision-making when they disregard the plain and unambiguous language of the parties' contract. *Weiss v. Sallie Mae, Incorp.*, 939 F.3d 105, 107 (2d Cir. 2019). Vacatur is warranted "when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice'" *Stolt-Nielsen S.A.*, 559 U.S. at 671 (citations omitted). Courts have held that "'arbitral action contrary to express contractual provisions will not be respected' on judicial review." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994) (internal citations omitted).

Here, the majority did precisely that. The BCs expressly conditioned each six-month option period on Unico providing written notice "not later than forty-five (45) days before the end of the then-existing period." Award at pp. 15-16. This language is unambiguous and mandatory, yet the majority declined to enforce it against Unico (despite holding JMB to strict adherence to the contract notice with respect to termination and withdrawal), adopting instead a results-oriented view that it would have been "unrealistic to expect, much less require, Unico to provide notices to exercise options 2 through 6." Award at p. 70. The majority cited no legal authority or colorable justification permitting an arbitrator to disregard explicit contractual notice of intent requirements on the ground that compliance would be "unrealistic." As Arbitrator Tsimis emphasized in dissent,

there is no precedent allowing for disregard of express terms of a contract. Award at pp. 82-84 ("Unico Marine's own papers underscore the lack of precedent or authority to support its position…," that it was entitled to damages for the unexercised option periods.)  By refusing to require the contract's clear notice provisions, the majority "stray[ed] from interpretation and application of the agreement" (*Id.*) and instead dispensed its own brand of equity, in manifest disregard of well-defined law requiring that all contractual terms be given effect.

### 2.  The BCs Require Written Notice of Extension 45 Days in Advance

As discussed, *supra*, the BCs required Unico to provide written notice of its intent to exercise each option period "not later than forty-five (45) days before the end of the then-existing period." Award at pp. 15-16. It is undisputed that Unico never provided such notice for options 2 through 6 despite the ability to do so at any time prior to forty-five days before expiration. Rather than applying the contract as written, the majority excused Unico's noncompliance based on speculation and legally irrelevant considerations. First, the majority reasoned that it would have been "unrealistic" to expect Unico to provide timely notices because arbitration had commenced. Award at p. 70.  Unico had exercised the first option notice on November 12, 2021, and could have exercised options 2-6 but chose not to do so.  The majority's reliance on the December 2nd date (when the panel was constituted) as the date it became unrealistic for Unico to exercise option period lacks merit and is unsubstantiated.  As Arbitrator Tsimis acknowledged, arbitration had already commenced when Unico attempted to exercise its options for the first extension period. Award at pp. 81–82.

Further, the majority excused Unico's failure to exercise its options on the ground that JMB's subsequent re-chartering of the ATBs to Centerline "eliminated any possibility of JMB providing the ATBs to Unico for the option periods." Award at p. 70. That reasoning disregards the BCs' express notice requirement and basic logic as there was never any realistic chance of

Unico retaking the Vessels after the commencement of the arbitration. The Centerline BCs were not executed until November 22, 2021, and the Centerline on-hire dates did not commence until December 18, 2021, and January 7, 2022. Award at pp. 34, 69. Although Unico was required to provide written notice of extension no later than 45 days before expiration of previous option period, Unico could have exercised all extension options on or before November 12, 2021 to protect its rights, just as it did with the first option while the Vessels were in JMB's possession. The rechartering of the Vessels to Centerline made no material difference as Unico was never realistically going to retake control of the Vessels and had no desire to do so as evidenced by the fact that Unico did not challenge the vessel arrests and allowed their release back to JMB in October-November 2021 while the matter was pending before federal courts in Florida and Louisiana.

### 3.    Arbitrators Cannot Speculate Whether Contract "Would Have" Been Extended

The Panel majority's speculation that Unico would have exercised an unexercised option period provides a clear example of manifest disregard of well-defined law. Courts reject damages based on the assumption that a party would have exercised an unexercised contractual option, because such damages rest on speculation rather than legally cognizable loss. *Mktg. & Mgmt. Info., Inc. v. United States*, 62 Fed. Cl. 126, 130 (2004) ("[D]amages for [unexercised] option years would be inherently speculative"). Contracting parties cannot recover expectancy damages for option periods that were never exercised, as those losses are too contingent to support a damages award. *Hi-Shear Tech. Corp. v. United States*, 356 F.3d 1372, 1380 (Fed. Cir. 2004) (holding that a contractor "could not claim breach damages for two unexercised option years"); *E. Coast Res. LLC*, 707 F. Supp. 2d at 410 (E.D.N.Y. 2010) ("[A]s a matter of law, damages for unexercised option years are unrecoverable") (citations omitted).

The majority disregarded this principle entirely. The BCs conditioned each extension option on Unico providing written notice "not later than forty-five (45) days before the end of the then-existing period." Award at pp. 15–16. Rather than applying this clear contractual requirement, the majority speculated (without any support) that Unico would have exercised the remaining options. The majority ignored the BCs' mandatory written-notice requirement as unrealistic and instead substituted conjecture about what Unico "would have" done in a counterfactual world. But the law does not permit arbitrators to rewrite the parties' contract or infer the exercise of options that were never exercised. The BCs required written notice; Unico did not give it. That should have ended the inquiry.

Further, the majority's speculation is especially untenable given Unico's own commercial choices to limit exposure to six-month periods. Unico, because it was a new business, deliberately structured its BC obligations using six month terms, limiting its liability and financial commitments. Having elected to assume limited short-term exposure, and subsequently failing to operate successfully, Unico took advantage of the limited term of the BCs by redelivering the 284.[18] Unico cannot have its cake and eat it too. Unico must bear the consequences of its business decision to maintain flexibility and limit its contractual liability (which it greatly benefited from on the ATB 284). It cannot retroactively convert its contractual commitment of six months into a multi-year entitlement by the majority's speculation that Unico would have exercised additional options it never actually exercised. By ignoring the BCs' express condition precedent and relying instead on speculation about hypothetical future conduct, the Panel consciously chose not to apply governing law. This is the very definition of manifest disregard.

---

[18] The majority declined to assume Unico's exercise of options on ATB 284 which would have increased the damages awarded to JMB.

Importantly, the majority acknowledged that lost profit damages must be proved by "reasonable certainty"(Award at p. 70), but then the majority disregarded this known and well-established legal principal in favor of unfounded conclusory statements to award damages for the unexercised option periods to a company with a history of operational struggles for the limited time the company had been in business. *See Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 404 (1993) (finding that lost profit damages for a new business requires a stricter standard as they inherently speculative); *Mehta v. N.Y. City Dept. of Consumer Affairs*, 162 A.D.2d 236, 237 (1st Dep't 1990) (holding that lost profits are not recoverable unless the business was established and operating for a definite period and the profits can be proven with reasonable certainty, as projections based on comparable businesses are deemed speculative).

### iv.    The Panel Demonstrated Bias and Partiality Against JMB

Evident partiality exists "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters*, 748 F.2d 79, 84 (2d Cir. 1984). Although courts require more than the mere "appearance of bias," the standard does not demand proof of actual corruption or explicit misconduct. *Id.* Rather, the inquiry focuses on whether the arbitrator's conduct demonstrates a connection to the outcome or a pattern of decision-making that a reasonable observer would view as favoring one side. *Id.*; *Certain Underwriting Members of Lloyds of London v. Fla. Dep't of Fin. Servs.*, 892 F.3d 501, 507 (2d Cir. 2018) (requiring "something more than the mere appearance of bias" and noting that evident partiality may be found where the record shows a direct connection between the arbitrator's conduct and the outcome).

The record here demonstrates precisely such a pattern: the Panel strictly enforced contractual requirements when doing so benefited Unico but refused to apply the same strict standards when they favored JMB. The Award itself illustrates this asymmetry. In addressing

JMB's withdrawal of ATB 220, the Panel emphasized that termination is a "dramatic event" and that charter-party provisions governing it "are typically strictly enforced." Award at pp. 63–64. The Panel further held that Clause 20's requirement of written notice was "unambiguous and clear," and that JMB's rights depended on strict compliance with that notice provision. *Id.* Yet when analyzing Unico's failure to comply with Clause 5(c)'s and Clause 23's equally unambiguous written-notice requirement for exercising option periods, the majority abandoned the strict-enforcement approach it had just applied to JMB. Instead, the majority excused Unico's noncompliance as "unrealistic to expect" (Award at p. 70), even though extension—like withdrawal—materially alters the parties' contractual relationship, imposes new obligations, and is governed by terms that are similarly unambiguous and clear. Clause 5(c) required written notice "not later than forty-five (45) days before the end of the then-existing period" (Award at pp. 15–16), yet the Panel refused to enforce that requirement against Unico.

This disparate treatment cannot be reconciled with neutral adjudication. When JMB's rights depended on strict adherence to written-notice provisions, the Panel enforced the contract to the letter. When Unico's rights depended on the same principle, the Panel disregarded the contract entirely, substituting its term expectations and speculation about what Unico "would have" done. Award at p. 70. A reasonable observer would see a direct connection between this selective application of legal standards and the outcome: the Panel's strict-construction approach was applied only when it favored Unico and relaxed only when strict enforcement would have defeated Unico's claims.

## v. The Panel's Award, If Left Undisturbed, Would Have Serious and Adverse Public Policy Consequences

Independent of the doctrinal defects discussed above, the Panel's decision—if allowed to stand—would have far-reaching and destabilizing consequences that run counter to settled public

23

policy governing commercial contracting. "[A]n award which is violative of public policy will not be permitted to stand." *Sprinzen v. Nomberg*, 46 N.Y.2d 623, 630 (1979). Public policy considerations may "be raised for the first time on a motion to vacate." *United Fed'n of Teachers, Loc. 2 v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 1 N.Y.3d 72, 79 (2003).

Options to extend are a ubiquitous feature of charter parties and rental agreements. They exist precisely to promote commercial flexibility. *Bleecker St. Tenants Corp. v. Bleeker Jones LLC*, 16 N.Y.3d 272, 277-78 (2011) (holding that term renewal options make commercial leases more attractive). They allow charterers to respond to changing market conditions while permitting owners to price risk appropriately during defined base terms. Under longstanding contract principles, an option does not create a binding obligation unless and until it is timely and properly exercised. *See supra*. Treating unexercised option periods as if they were fixed contractual terms—and exposing owners to damages for those periods—fundamentally alters the risk allocation embedded in such agreements.

If the majority's ruling were permitted to stand—which runs contrary to the decisional law cited herein—owners and lessors would face potential liability for speculative damages during periods in which no enforceable contractual obligation existed. *See In re N.Y. Off. for People with Dev. Disabilities (Civil Serv. Emps. Ass'n, Inc., Local 1000, AFSCME, AFL-CIO)*, 193 A.D.3d 1305, 1307 (3d Dep't 2021) (citing the grounds whereby an arbitrator's award of damages should be overturned). The predictable response to such a rule would be market-wide: rational equipment owners would either (i) eliminate renewal options altogether, (ii) sharply increase base-term pricing to insure against phantom future liability, or (iii) impose onerous pre-exercise commitments that defeat the very purpose of optionality. It would also become impossible for start-up businesses, who do not have substantial capital for equipment purchase or long-term

24

leases, to operate. Each outcome would materially impair efficient contracting in industries that depend on flexible deployment of capital-intensive assets. Additionally, the award of damages for the unexercised option periods is akin to an award of punitive damages (not called for by the BCs), which types of damages have not been allowed in New York arbitrations as they violate public policy. *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 357-58 (1976); *Wrap-N-Pack, Inc. v. Kaye*, 528 F. Supp. 2d 119, 123-24 (E.D.N.Y. 2007) (holding that it is a well-established principle of New York law that punitive damages—an extraordinary remedy—are unavailable for claims sounding in breach of contract and "that an action grounded on breach of contract cannot be characterized as an action in tort in order to recover punitive damages….") (citations omitted).

The maritime context underscores the public policy problem. Charter options are routinely used to manage operational uncertainty, regulatory risk, seasonal demand, and freight-rate volatility. *See supra*. Imposing damages for hypothetical option periods would discourage owners from offering such flexibility and would inject uncertainty into vessel valuation, financing, and insurance underwriting. Lenders and insurers price risk based on defined contractual exposure— not on speculative extensions that a counterparty never elected to exercise.

More broadly, the Panel's approach conflicts with the public policy against awarding damages that place a claimant in a better position than performance would have provided. *Interfilm, Inc. v. Advanced Exhibition Corp.*, 249 A.D.2d 242, 242 (1st Dep't 1998) (finding also that damages for future business were purely speculative and therefore unrecoverable, particularly in light of the business's prior operational failures). Allowing recovery for unexercised option periods effectively converts a unilateral privilege into a guaranteed revenue stream, transforming optional future performance into a form of retroactive insurance.

Courts applying the FAA have repeatedly recognized that arbitration awards may not be enforced where they contravene well-defined and dominant public policy or rewrite an existing contract. *In re Livermore-Johnson (N.Y.S. Dep't of Corr. & Cmty. Supervision)*, 155 A.D.3d 1391, 1393 (3d Dep't 2017) (finding that if an arbitrator imposes obligations "not supported by any reasonable construction of the [contract], the arbitrator has, in effect, created a new contract for the parties," which constitutes grounds for vacatur of the award.) Here, the policy at stake is not abstract: it is the concrete, settled rule that contractual liability does not extend to periods for which no binding agreement existed. *See supra*. Upholding an award that disregards that principle would distort commercial incentives across the equipment-rental and maritime sectors, discouraging the very contractual mechanisms that facilitate efficient market behavior.

For these reasons, confirmation of the Panel's ruling on option-period damages would not merely be erroneous as a matter of law; it would affirm a result that is affirmatively harmful to commercial practice and contrary to public policy. The Award should therefore be vacated to the extent it permits recovery for unexercised option periods.[19]

## B. CONFIRMATION OF ATB 284 AWARD

The FAA provides a "streamlined" process for a party seeking to confirm an arbitration award. "Confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' … and the court 'must grant' the award 'unless the award is vacated, modified, or corrected." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006); *see also Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.

---

[19] Because vacatur of the portion of the award of damages to ATB 205 and ATB 220 which exceeded the arbitrators' authority does not require that the Court recompute damages, and is mathematically and conceptually severable from the rest of the award, this Court may may adopt the award of damages calculated in the dissent (at p.86) as follows: ATB 205 Base Period: $350,386; 1st Option Period: $726,300=$1,076,686, ATB 220 Base Period: 514,040; 1st Option Period $1,325,310=$1,839,350, Total Lost Profits:$2,916,036. Award at p. 86.

1984). A party opposing confirmation has the burden of proof and "the showing required to avoid confirmation is very high." *A & G Coal Corp. v. Integrity Coal Sales, Inc.*, 565 Fed. Appx. 41, 42 (2d Cir. 2014) (summary order).

Section 9 of the FAA provides that a party to an arbitration may seek confirmation of an arbitration award within one year after the award has been made. 9 U.S.C. § 9. The instant Petition is timely because the Award was issued on or about November 13, 2025.  The grounds to refuse to confirm an award are those set forth in sections 10 and 11 of the FAA.  Absent a showing of any of these limited circumstances, a "court ***must grant*** such an order" confirming an award. 9 U.S.C. § 9 (emphasis added).

The ATB 284 Award held Unico liable as a result of its early redelivery of the ATB 284 prior to the expiration of the contractual base term of six months. The Panel found Unico to be in breach of the BC as follows: "Unico redelivered ATB 284 on October 7, 2021, well short of the base term's November 30, 2021 expiration.  Award at p. 61."  The Award for ATB 284 (at p. 80) summarized JMB's damages for breach of the BC for ATB 284 as follows:[20]

1. The Panel finds Unico Marine Services LLC liable to JMB Shipping ATB 284 LLC for damages in the amount of $512,112.00.
2. The Panel also awards Unico [sic] interest in the amount of $146,660.46 which has been calculated at the weighted prime lending rate as determined using the calculator on the SMA website beginning to run from October 5, 2021 until the date of this Final Award.
3. Additionally, Unico [sic] is awarded recovery of its reasonable attorney's fees and expenses in the amount of $380,000.
4. The Panel also allocates responsibility for the Panel's fees as set forth in Section X above, as well as Appendix A which forms an integral part of this Award.

---

[20] The Panel made a clerical error inserting "Unico" instead of "JMB" when awarding interest for the damages awarded on ATB 284 and reasonable attorney's fees and expenses.  JMB respectfully requests the Court to correct the clerical error when confirming the award in favor of ATB 284, pursuant to 9 U.S.C. § 11(a).

There is no evidence that the ATB 284 Award was procured by corruption, fraud, or undue means, that there was evident partiality or corruption in the arbitrators, that the arbitrators were guilty of misconduct, or that the arbitrators exceeded their powers.  9 U.S.C. § 10(a).

## V.    CONCLUSION

Based on the foregoing, JMB respectfully requests that this Court vacate the ATB 205 and ATB 220 Awards, and confirm the ATB 284 Award.

Dated: New York, New York,  
      January 15, 2026

Respectfully submitted,  
HOLLAND & KNIGHT LLP

/s/ Vincent J. Foley  
Vincent J. Foley  
Marie Larsen  
HOLLAND & KNIGHT LLP  
787 Seventh Avenue, 31st Floor  
New York, NY 10019  
Telephone: (212) 513-3200  
E-mail: vincent.foley@hklaw.com  
E-mail: marie.larsen@hklaw.com

*Attorneys for Petitioners JMB Shipping ATB 205, LLC, JMB Shipping ATB 220, LLC, and JMB Shipping ATB 284, LLC*

## <u>WORD COUNT CERTIFICATION</u>

I hereby certify that this Memorandum of Law in Support of Motion to Vacate in Part Award of Damages on ATB 205 and ATB 220 and to Confirm Award of Damages on ATB 284 complies with Local Civil Rule 7.1(c) word count limit. In determining compliance, I relied on the word count function of the word processing system used to prepare this document. The total number of words in this Memorandum of Law in Support of Motion to Vacate in Part Award of Damages on ATB 205 and ATB 220 and to Confirm Award of Damages on ATB 284 exclusive of the caption, table of contents, table of authorities, signature block, and required certificates is 8,582 words.

Dated: New York, New York
      January 15, 2026

                                    */s/ Vincent J. Foley*
                                       Vincent J. Foley