UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JMB SHIPPING ATB 205, LLC, JMB SHIPPING ATB 220, LLC, and JMB SHIPPING ATB 284, LLC,<br><br>                    Petitioners,<br><br>           - v -<br><br>UNICO MARINE SERVICES LLC,<br><br>                    Respondent. | Civil Action No. 1:26-cv-00416 |

**MEMORANDUM OF LAW IN OPPOSITION TO PETITION TO VACATE
<u>AND IN SUPPORT OF CROSS PETITION TO CONFIRM ARBITRATION AWARD</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES............................................................................................ ii

PRELIMINARY STATEMENT....................................................................................... 1

BACKGROUND AND FACTS........................................................................................ 2

I.    LEGAL STANDARD ............................................................................................ 2

   A.    Confirmation Is Mandatory Absent a Statutory Ground for Vacatur ................... 2

   B.    Judicial Review Is Extremely Limited and Does Not Permit Merits Review ................... 3

   C.    Manifest Disregard of the Law Is an Extraordinary and Narrow Doctrine ........................ 4

II.    ARGUMENT ......................................................................................................... 4

   A.    THE PANEL DID NOT EXCEED ITS POWERS UNDER FAA § 10(a)(4)..................... 5

   B.    JMB's "No Contract" Argument Challenges the Award's Merits, Not the Panel's Authority ................................................................................................ 8

   C.    THE AWARD DOES NOT REFLECT MANIFEST DISREGARD OF THE LAW ....... 10

     1.    Manifest Disregard of the Law Is an Extraordinary Doctrine of Last Resort............... 10

     2.    JMB's "Disregard of Notice Provisions" Argument Confuses Contract Interpretation with Manifest Disregard ................................................................11

     3.    JMB's "45-Day Written Notice" Argument Again Seeks Merits Review, Not Manifest-Disregard Relief ..................................................................... 13

     4.    JMB's "Speculation" Argument Again Seeks Merits Review, Not Manifest-Disregard Relief ........................................................................... 14

   D.    JMB CANNOT SHOW EVIDENT PARTIALITY OR MISCONDUCT (FAA § 10(a)(2)) 16

   E.    PUBLIC POLICY DOES NOT SUPPORT VACATUR ................................................. 19

   F.    THE COURT SHOULD CONFIRM THE ATB 205 AND ATB 220 AWARDS............. 20

   G.    The ATB 284 Award Is Not in Dispute and May Be Confirmed ..................................... 21

CONCLUSION................................................................................................................ 23

CERTIFICATION OF SERVICE.................................................................................... 24

CERTIFICATION OF WORD COUNT .......................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*187 Concourse Assocs. v. Fishman*,
399 F.3d 524, 527 (2d Cir. 2005) ............................................................................. 7

*A&G Coal Corp. v. Integrity Coal Sales, Inc.*,
12 Civ. 5293 (ALC), 2013 U.S. Dist. LEXIS 71936, at *5, 2013 WL 2244311 (S.D.N.Y. May 21, 2013) ............................................................................................................. passim

*Ace Am. Ins. Co. v. Christiana Ins. LLC*,
2012 U.S. Dist. LEXIS 51863, at *21, 2012 WL 1232972 (S.D.N.Y. Apr. 12, 2012)............. 21

*Banco de Seguros del Estado v. Mut. Marine Offs., Inc.*,
344 F.3d 255, 260 (2d Cir. 2003) ............................................................................. passim

*Barbier v. Shearson Lehman Hutton, Inc.*,
948 F.2d 117, 121 (2d Cir. 1991) ............................................................................. 15

*Bergheim v. Sirona Dental Sys., Inc.*,
711 F. App'x 43, 46 (2d Cir. 2017) ........................................................................... 16

*Certain Underwriting Members of Lloyds of London v. Fla. Dep't of Fin. Servs.*,
892 F.3d 501, 507 (2d Cir. 2018) ............................................................................. 17

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95, 110 (2d Cir. 2006) ....................................................................... 2, 4, 15

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
333 F.3d 383, 389 (2d Cir. 2003) ............................................................................. passim

*EB Safe, LLC v. Hurley*,
1:17-CV-06163 (ALC), 2018 U.S. Dist. LEXIS 82034, at *15–18, 2018 WL 2225003 (S.D.N.Y. May 15, 2018) ..................................................................................... 17

*Garrity v. Lyle Stuart, Inc.*,
40 N.Y.2d 354 (1976)............................................................................................... 19

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
    552 U.S. 576, 584 (2008)...................................................................................... 19, 20

*Kerr v. John Thomas Fin.*,
    No. 14-cv-9168 (KBF), 2015 U.S. Dist. LEXIS 92684, at *13, 2015 WL 4393191 (S.D.N.Y.
    July 16, 2015).................................................................................................. 16, 20

*Kooleraire Serv. & Installation Corp. v. Bd. of Educ.*,
    28 N.Y.2d 101, 106–07 (1971)................................................................................ 12

*Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters*,
    748 F.2d 79, 84 (2d Cir. 1984) .............................................................................. 17

*Pers. Staffing Grp., LLC v. XL Ins. Am., Inc.*,
    2024 U.S. Dist. LEXIS 200053, at *24–28, 2024 WL 4667253 (S.D.N.Y. Nov. 4, 2024)....... 18

*ReliaStar Life Ins. Co. v. EMC Nat'l Life Co.*,
    564 F.3d 81, 86 (2d Cir. 2009) ........................................................................ passim

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*,
    668 F.3d 60, 72–75 (2d Cir. 2012) ..................................................................... 17, 18

*Schwartz v. Merrill Lynch & Co., Inc.*,
    665 F.3d 444, 451–52 (2d Cir. 2011) ...................................................................... 10

*Sprinzen v. Nomberg*,
    46 N.Y.2d 623 (1979)........................................................................................ 19

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,
    559 U.S. 662, 671 (2010).................................................................................... 13

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329, 339 (2d Cir. 2010) ..................................................................... passim

*Tecnotubi S.P.A. v. Tex-Isle Supply, Inc.*,
    No. 23-CV-7263 (VSB), 2025 WL 2197148 (S.D.N.Y. Aug. 1, 2025).................................. 3, 7

*United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*,
    484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987).................................................. 3, 19

*Wallace v. Buttar*,

   378 F.3d 182, 189 (2d Cir. 2004) ......................................................................... 1, 3

*Westerbeke Corp. v. Daihatsu Motor Co.*,

   304 F.3d 200, 220–21 (2d Cir. 2002) ......................................................................... 4

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,

   103 F.3d 9, 12 (2d Cir. 1997) ......................................................................... 2

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*,

   946 F.2d 1003, 1009 (2d Cir. 1991) ......................................................................... 12

**Statutes**

9 U.S.C. § 9 ......................................................................................................... 4, 23, 24

9 U.S.C. § 10 ................................................................................................................ 4

## PRELIMINARY STATEMENT

Unico Marine Services LLC ("Unico") submits this memorandum of law in opposition to the petition of JMB Shipping ATB 205, LLC, JMB Shipping ATB 220, LLC, and JMB Shipping ATB 284, LLC (collectively, "JMB") seeking vacatur of portions of a final arbitration award (the "Award"), and in support of Unico's cross-motion to confirm the Award in its entirety. The Award—including the ATB 205 and ATB 220 awards—resolved the parties' disputes following a full and fair arbitration and is entitled to confirmation.

JMB's petition seeks review of the merits of a completed arbitration. That review is, however, foreclosed by the Federal Arbitration Act ("FAA") and by settled precedent. Judicial review of arbitration awards is sharply limited. The FAA does not permit courts to revisit the merits of an arbitral decision or to substitute their judgment for that of the arbitrators. A party seeking vacatur must do more than identify alleged legal or factual error, it must establish one of the FAA's narrow and exclusive grounds for vacatur; the burden of doing so is heavy, and the showing required to avoid confirmation is very high. *A&G Coal Corp. v. Integrity Coal Sales, Inc.*, 12 Civ. 5293 (ALC), 2013 U.S. Dist. LEXIS 71936, at *5, 2013 WL 2244311 (S.D.N.Y. May 21, 2013) ("[A] party moving to vacate an arbitration award bears a 'heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law.'" (quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)).

Here, the arbitral panel acted within the scope of its authority, construed and applied the governing charter parties, and issued final and definite awards after years of proceedings, extensive briefing, and a fully developed evidentiary record. JMB does not identify—because it cannot—any basis for vacatur under the FAA. JMB's petition fails because it seeks an impermissible merits review of the Panel's contract interpretation and damages analysis, notwithstanding that the Award

expressly considered the notice provisions contained in the Bareboat Charter and causation issue and reflects no knowing refusal to apply any clearly governing legal principle—conduct that cannot support vacatur under the FAA.

Because none of the statute's narrow grounds is satisfied, and because confirmation is mandatory absent such a showing, the Court must confirm the ATB 205 and ATB 220 awards in full.

## BACKGROUND AND FACTS

JMB's recitation of "facts" consists largely of arguments, selective quotations, and evidentiary disputes already considered and resolved by the arbitral Panel, which this Court may not revisit under the FAA. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). The relevant factual findings are set forth in the Final Award itself and are referenced where necessary in the argument below.

## I.  LEGAL STANDARD

### A.  Confirmation Is Mandatory Absent a Statutory Ground for Vacatur

The FAA sharply limits judicial review of arbitration awards. Under Section 9 of the FAA, a court must confirm an arbitration award unless the party opposing confirmation satisfies its heavy burden of establishing one of the narrow grounds for vacatur set forth in Section 10. 9 U.S.C. §§ 9–10.

The Second Circuit has repeatedly emphasized that a court's role in reviewing an arbitration award is "severely limited." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997). An award must be confirmed so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," even if the court would have reached a different result. *ReliaStar Life Ins. Co. v. EMC*

*Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (quoting *United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)).

Put differently, confirmation is required if there exists even a "barely colorable justification" for the arbitrator's decision. *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003). Accordingly, a party seeking vacatur bears a "heavy burden." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). Courts in this District routinely apply these principles to confirm arbitration awards and reject attempts to obtain impermissible merits review. *See, e.g., Tecnotubi S.P.A. v. Tex-Isle Supply, Inc.*, No. 23-CV-7263 (VSB), 2025 U.S. Dist. LEXIS 148026, at *5, 2025 WL 2197148 (S.D.N.Y. Aug. 1, 2025) (denying vacatur and confirming award; holding vacatur motion is "not an occasion for de novo review," refusing to "reassess[] … the evidentiary record," and confirming where the tribunal supplied more than a "barely colorable justification").

### B.  Judicial Review Is Extremely Limited and Does Not Permit Merits Review

Judicial review of arbitration awards is among the narrowest known to the law. *See, Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (holding that judicial review of arbitration decisions is "severely limited" and "highly deferential to the arbitral award and obtaining judicial relief for arbitrator's manifest disregard of law is rare"). The FAA does not permit courts to reconsider the merits of the dispute, reweigh the evidence, or substitute their judgment for that of the arbitrator. *Id.* at 389-93; *ReliaStar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009).

An arbitrator does not exceed his powers under Section 10(a)(4) of the FAA merely because he commits an error of law or fact. *See, Duferco*, 333 F.3d at 389 ("We know that it is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law."). Vacatur is warranted only where the arbitrator acts outside

[3]

the bounds of the parties' agreement, not where the arbitrator interprets that agreement incorrectly or reaches a result the court would not have reached. *See, e.g., Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220–21 (2d Cir. 2002). Confirmation proceedings are therefore summary in nature and serve only to convert a final arbitral decision into a judgment of the court. *See, D.H. Blair,* 462 F.3d at 110 ("Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.") (quotations omitted). An arbitrator is not required to explain his reasoning, and an award must be confirmed if any plausible basis for the decision can be inferred from the record. *Id.*

### C. Manifest Disregard of the Law Is an Extraordinary and Narrow Doctrine

Manifest disregard is a judicial gloss on § 10(a) and remains an extraordinary doctrine of last resort. *See, T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010). Manifest disregard requires more than legal error or misapplication of the law; it requires proof that the arbitrator was aware of a clearly governing legal principle and intentionally refused to apply it. *Id.* at 339–40. Where an arbitrator considers the applicable law and applies it to the facts—whether correctly or incorrectly—manifest disregard cannot be established. *Id.* at 340. Attempts to recast alleged legal or factual errors as manifest disregard are impermissible efforts to obtain merits review barred by the FAA. *See, Duferco*, 333 F.3d at 389–90.

## II.    ARGUMENT

JMB's petition seeks impermissible merits review of a detailed arbitral award issued by a duly constituted panel acting squarely within the authority conferred by the parties' arbitration agreements and submissions. The Panel interpreted the Bareboat Charters; resolved disputed issues of fact concerning notice, option periods, and damages; and reached conclusions supported by a developed evidentiary record following extensive briefing, testimony, hearings, and deliberation. Whether the Court would have interpreted the contracts or weighed the evidence differently is

immaterial. The FAA strictly limits judicial review to narrow circumstances not present here, and JMB's attempts to reframe disagreement with the Panel's reasoning and outcome as excess of authority or manifest disregard of the law are foreclosed as a matter of Second Circuit precedent. The Award should therefore be confirmed in all respects, and the petition to vacate denied.

### A.  THE PANEL DID NOT EXCEED ITS POWERS UNDER FAA § 10(a)(4)

Vacatur under FAA § 10(a)(4) is accorded the narrowest of readings and turns on a single inquiry: whether the arbitrators had the authority to decide the issue presented, not whether they decided it correctly. *See, Banco de Seguros del Estado*, 344 F.3d at 262. With respect to contract interpretation, that standard "essentially bars review of whether an arbitrator misconstrued a contract." *T.Co Metals, LLC,* 592 F.3d at 339. So long as the arbitrators were "even arguably construing or applying the contract and acting within the scope of their authority," an award may not be vacated. *ReliaStar Life Ins. Co.,* 564 F.3d at 86.

That standard is dispositive here. There is no dispute that JMB submitted to the Panel the issues of termination, continuation, option periods, and damages under the Bareboat Charters. Having fully briefed those issues and also having invited the Panel's interpretation of the governing provisions, JMB cannot now recast their displeasure with the outcome as an excess of arbitral authority. This Court has repeatedly rejected attempts to transform merits challenges into jurisdictional objections under § 10(a)(4). *A&G Coal Corp.*, 2013 U.S. Dist. LEXIS 71936 at *8– 10. The Panel indisputably had the power to reach the question of the contractual option periods and award Unico damages for JMB's breach of the Bareboat Charters as the arbitration agreement contained in the Bareboat Charters broadly provides that the arbitrators will determine "any controversy, claim, dispute, or demand arising out of" the Bareboat Charters. *See*, Exhibit 3 to Affidavit of Vincent Foley, ECF No. 4-3; *see also*, *A&G Coal Corp.*, 2013 U.S. Dist. LEXIS at

*9–10 (holding that where an arbitrator was empowered to resolve "all disputes, claims and controversies" he had the authority to interpret the contract and award damages).

JMB's principal contention—that the Panel exceeded its authority by awarding damages for option periods that were not formally noticed also fails on its face. *See* JMB Memorandum ("JMB Mem.") at 18–21, ECF No. 5. Rather than address the Panel's grant of authority found in the Bareboat Charters, JMB instead seeks to attack the underlying merits of the Panel's Award, facially improper in a motion for vacatur.

Notwithstanding the impropriety of JMB's approach, the Award shows that the Panel did not ignore, rewrite, or disregard the option or notice provisions set forth in the Bareboat Charters. To the contrary, the Panel expressly analyzed those provisions, acknowledged that Unico did not provide written notice for option periods 2–6, and then explained—based on its interpretation of the contracts in light of JMB's wrongful conduct—why notice was not required as a predicate to damages. *See* Award at 71–72, ECF No. 4-2. The majority concluded that the later option periods "could not and did not then exist" because of JMB's wrongful termination of the Bareboat Charters, repossession and re-chartering of the Vessels to a third party, and that JMB therefore could not rely on a notice condition the performance of which it had rendered impossible. *See* Award at 71, ECF No. 4-2 Whether that interpretation was correct is immaterial; it is plainly an exercise of contract interpretation, not an act of arbitral overreach.

JMB's repeated assertion that the Panel "waived" the notice provisions deliberately mischaracterizes the Award. It is plain that the Panel did not disregard or excuse the notice requirement as a matter of equity; it acknowledged the requirement and then interpreted its operation, in light of JMB's wrongful termination, repossession, and rechartering of the Vessels, notwithstanding the lack of notice. JMB's objections—that each option period required a separate

[6]

business decision, that market conditions might have changed, or that Unico might not have exercised later options—are disagreements with the Panel's factual inferences and damages analysis. Such arguments challenge the correctness of the Award, not the Panel's authority, and are therefore foreclosed under FAA § 10(a)(4). Courts in this District routinely reject vacatur arguments that merely repackage disagreement with the arbitrators' reasoning as jurisdictional or excess-of-powers challenges. In *Tecnotubi*, for example, the court denied vacatur where the movant "dedicate[d] much of its motion to second guessing the Tribunal's substantive determination," holding that an argument premised on the notion that the tribunal "got it wrong" fails on its face because the relevant inquiry is "whether the arbitrators applied the law, not whether they got the answer right or wrong." 2025 U.S. Dist. LEXIS 148026.

The existence of a detailed Partial Dissent underscores the point. Arbitrator Tsimis agreed with the majority's liability findings but disagreed with the scope of damages, taking the position that lost profits should have been limited to the base term and the first exercised option period. *See* Award at 82–84, ECF No. 4-2. The majority considered and rejected that view. A reasoned disagreement among arbitrators concerning the interpretation of contractual provisions underscores that the panel was engaged in contract construction—an exercise squarely within its authority—rather than dispensing its own "brand of industrial justice." *See, e.g., ReliaStar Life Ins. Co.*, 564 F.3d at 86 (quoting *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005)); *Duferco*, 333 F.3d at 389–90; *A&G Coal Corp.*, 2013 U.S. Dist. LEXIS 71936 at *8–10.

JMB's related attack on the damages analysis fares no better. The Panel heard competing expert testimony, evaluated methodologies, and grounded its damages award in the evidentiary record, tying lost earnings to JMB's wrongful termination of the Bareboat Charters and repossession of the ATB 205 and ATB 220. *See* Award at 72–73, ECF No. 4-2. That type of fact-

[7]

bound damages determination is entrusted to arbitrators and is not subject to judicial review under

§ 10(a)(4).

In short, Nor does JMB's criticism of the Panel's management of the arbitral record provide a basis

for vacatur. Section 10(a)(4) focuses on whether the arbitrators had the power to decide an issue,

not on whether the court agrees with how that power was exercised. *See, e.g., Banco de Seguros*,

344 F.3d at 262. The arbitration clause here is exceptionally broad, requiring arbitration of "any

controversy, claim, dispute, or demand arising out of this Agreement" under   the Society of

Maritime Arbitrators ("SMA") rules,[1] and contains no limitation on the Panel's authority to control

proceedings or request supplemental submissions. Acting under that authority, the Panel resolved

evidentiary disputes, permitted targeted supplemental briefing where appropriate, and declared the

proceedings closed. *See* Award at 12-14, ECF No. 4-1. JMB's disagreement with those procedural

rulings does not transform them into an excess of authority.

In short, the Panel acted squarely within the authority conferred by the parties' arbitration

agreement and submissions. It interpreted the Bareboat Charters, determined how the option and

notice provisions operated in light of JMB's breaches, and awarded damages based on a developed

record. Because the Panel did not violate any express limitation on its authority, FAA § 10(a)(4)

provides no basis for vacatur, and the Award must be confirmed.

### B. JMB's "No Contract" Argument Challenges the Award's Merits, Not the Panel's Authority

JMB's contention that the Panel lacked authority to award damages because "no valid

contract existed" during the extension periods is a merits argument, not a jurisdictional one. *See*

JMB Mem. at 24–27, ECF No. 5. Whether the Bareboat Charters expired upon non-exercise of

---

[1] https://smany.org/rules/

later option periods, and whether Unico could recover for those periods notwithstanding JMB's wrongful termination, repossession and rechartering of the Vessels, are questions of contract interpretation and breach that were squarely submitted to the Panel and resolved in the Award. Under settled Second Circuit law, disagreement with the Panel's resolution of those questions does not establish that the Panel exceeded its powers under FAA § 10(a)(4).

The authorities JMB upon which relies underscore the impropriety of their attempt to seek vacatur. Rather than addressing the scope of an arbitrator's authority in the context of FAA § 10(a)(4), the cases stand for the proposition that damages require a valid contract do not advance its position. Those cases address whether a plaintiff has established entitlement to relief as a matter of substantive contract law; they do not suggest that an arbitrator exceeds his authority by determining that damages are recoverable under the contract as interpreted. Here, the Panel did not assume the existence of contracts during the later option periods in the abstract. Rather, it analyzed the operation of the Bareboat Charters in light of JMB's wrongful termination, repossession and rechartering, and determined that Unico was entitled to recover damages flowing from such breach notwithstanding the absence of formal notice for later option periods. Whether that determination was correct is, again, immaterial. The FAA does not permit the Court to vacate an award because it disagrees with an arbitrator's contract analysis or application of law. *See Banco de Seguros del Estado*, 344 F.3d at 262.

JMB's heavy reliance on the Partial Dissent underscores—rather than undermines—the propriety of the Award. The dissent reflects a reasoned disagreement among arbitrators regarding the proper interpretation of the Bareboat Charters and the scope of recoverable damages. The majority considered that competing view and rejected it. The FAA does not authorize a reviewing court to adopt a dissenting arbitral opinion over the majority's interpretation, nor does the existence

[9]

of a dissent suggest that the arbitrators dispensed their own "brand of industrial justice." To the contrary, it confirms that the Panel was engaged in contract construction, an exercise squarely within its authority.

Ultimately, JMB's argument asks this Court to engage, *de novo*, in questions of contract interpretation, damages calculations, and the exact type of merits based analysis that is precluded by the FAA and interpreting case law. Section 10(a)(4) forecloses that inquiry. Because the Panel was plainly construing the parties' agreements and resolving disputes the parties submitted for arbitration, JMB's "no valid contract" theory provides no basis for vacatur.

### C. THE AWARD DOES NOT REFLECT MANIFEST DISREGARD OF THE LAW

#### 1. Manifest Disregard of the Law Is an Extraordinary Doctrine of Last Resort

Manifest disregard of the law is a doctrine of last resort, available only in exceedingly rare circumstances. To establish it, a movant must show that the arbitrators were aware of a clearly governing legal principle, understood that it controlled the outcome, and nevertheless consciously chose not to apply it. *See, e.g.,  T.Co Metals, LLC,* 592 F.3d at 339–40; *Schwartz v. Merrill Lynch & Co., Inc.,* 665 F.3d 444, 451–52 (2d Cir. 2011). Allegations of legal error, factual mistake, or incorrect contract interpretation are insufficient as a matter of law.

Here, JMB never identifies any clearly governing legal principle that the Panel knowingly refused to apply. Instead, it cites merits decisions and out-of-circuit authorities to argue that the Panel reached the wrong result, but that is not manifest disregard. The Second Circuit has repeatedly emphasized that the doctrine does not permit courts to second-guess arbitral reasoning or outcomes, and that an award must be enforced so long as there is at least a barely colorable justification for the result reached. *See, e.g.*, *Duferco,* 333 F.3d at 389.

The record also forecloses any suggestion that the Panel failed to consider or meaningfully address the issues that JMB now raises. The arbitration spanned multiple years and included extensive fact and expert discovery, motion practice, evidentiary hearings, and multiple rounds of briefing. At the Panel's direction, the parties submitted supplemental briefing addressing the option provisions and the scope of recoverable damages. The Award expressly engages with those issues, and the existence of a detailed partial dissent confirms that the Panel considered competing interpretations of the governing contracts and legal principles before reaching its conclusions. Disagreement with the majority's reasoning or outcome does not establish manifest disregard.

### 2. JMB's "Disregard of Notice Provisions" Argument Confuses Contract Interpretation with Manifest Disregard

JMB's assertion that the Panel "disregarded" the notice provisions fails as a matter of law. Manifest disregard requires a showing that the arbitrators knew of a clearly governing legal principle and consciously refused to apply it. It does not apply where, as here, the Panel acknowledged the contractual provision, recognized noncompliance, and then explained—based on its interpretation of the agreements and the factual posture created by JMB's wrongful conduct—why that provision did not bar Unico from recovery of damages for the option periods.

The Panel quoted and analyzed the notice language, expressly recognized that Unico did not provide written notice for option periods 2 through 6, and then determined—based on its reading of the Bareboat Charters in light of JMB's wrongful termination, repossession, and re-chartering—that the notice requirement did not preclude damages. In doing so, the Panel applied settled New York principles of law governing contractual conditions that are rendered inoperative by a counterparty's breach, expressly finding that JMB's termination, repossession, and re-chartering "eliminated any possibility" of continued performance and made it "unrealistic to expect, much less require," Unico to provide further option notices. *See* Award at 69–72, ECF No.

[11]

4-2. That reasoning reflects application of the settled rule that a party may not insist on strict compliance with a contractual condition precedent where its own conduct has frustrated performance or rendered compliance futile. *See, e.g., Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991); *Koeleraire Serv. & Installation Corp. v. Bd. of Educ.*, 28 N.Y.2d 101, 106–07 (1971). An arbitrator who considers and applies the contract— even if a party believes the interpretation is incorrect—has not ignored governing law, and such disagreement cannot support vacatur under the FAA. *See, Duferco*, 333 F.3d at 389 (2d Cir. 2003).

The Panel did not merely infer this conclusion; it expressly requested and considered supplemental briefing on the effect of JMB's termination and re-chartering on the option provisions, and then held that JMB's conduct foreclosed any ability to cure its termination or perform its remaining contractual obligations, thereby defeating JMB's argument that Unico's damages were limited to the base period. *See* Award at 69–70, ECF No. 4-2.

JMB's characterization of the Award also omits the basis for the Panel's futility determination. The Panel did not conclude that further option notices were unnecessary simply because arbitration had commenced; it expressly grounded that conclusion on JMB's improper and wrongful termination of the Bareboat Charters and its subsequent repossession and re-chartering of the Vessels to a third party, conduct that rendered any further notice by Unico both futile and unnecessary. *See* Award at 69–70, ECF No. 4-2. That clarification underscores that the Panel's reasoning rested on JMB's own actions, not on any procedural circumstance unrelated to the parties' contractual performance.

Moreover, JMB's reliance[2] on *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 671 (2010) is misplaced. That case addresses circumstances in which arbitrators disclaimed

---

[2] JMB Mem. at 14, 16-18.

reliance on the contract and imposed their own policy preferences. Here, the Panel grounded its decision in the text and operation of the parties' agreements and in the consequences of JMB's wrongful termination, repossession and rechartering, including the effect of that conduct on Unico's ability to exercise later options. *See* Award at 69–72, ECF No. 4-2. Where arbitrators are at least arguably construing or applying the contract, vacatur is unavailable. *See ReliaStar Life Ins. Co.*, 564 F.3d at 86 (2d Cir. 2009).

Yet again, JMB's reliance on Arbitrator Timis' dissent is misplaced. The existence of a detailed Partial Dissent confirms that, rather than manifestly disregarding the law, the Panel was engaged in direct consideration of the law and contract interpretation, in keeping with their authority. Arbitrator Tsimis articulated a competing interpretation of the same contractual provisions, which the majority considered and rejected. *See* Award at 82–84, ECF No. 4-2. The FAA does not authorize courts to adopt a dissenting arbitral view over the majority's interpretation. *See Banco de Seguros del Estado,* 344 F.3d at 262–63 (2d Cir. 2003).

Finally, JMB's emphasis on the asserted "unambiguity" of the notice clause does not transform an interpretive dispute into manifest disregard. Whether the contractual condition operated to bar damages following contract termination and repossession of the Vessels and rechartering them to a third party was a question that the parties submitted to the Panel and which the Panel decided. Because the Award shows consideration and application of the notice provision—not conscious refusal—JMB's manifest-disregard claim lacks any merit.

### 3. JMB's "45-Day Written Notice" Argument Again Seeks Merits Review, Not Manifest-Disregard Relief

JMB's reiterated focus on the Bareboat Charters' 45-day written notice requirement does nothing to support its manifest-disregard claim. The question under FAA § 10(a) is not whether the notice provision was mandatory or whether Unico could have complied with it as a factual

matter; it is whether the Panel knew of a clearly governing legal rule and consciously refused to apply it. The Award demonstrates the opposite.

As discussed *supra,* the Panel expressly acknowledged the notice requirement, recognized that Unico did not provide written notice for option periods 2 through 6, and then analyzed—based on its interpretation of the contracts and the consequences of JMB's wrongful termination, repossession, and re-chartering—whether that noncompliance barred damages. *See* Award at 69–72, ECF No. 4-2. JMB's disagreement with the Panel's conclusion that it would have been unrealistic to require further option notices after JMB placed the Vessels beyond Unico's control is a merits disagreement, not evidence of manifest disregard.

Nor does JMB's emphasis on alternative timelines convert this dispute into manifest disregard. Arguments about what Unico "could have" done before termination or about the timing of third-party charters ask the Court to reweigh evidence and second-guess the Panel's inferences regarding causation and damages. The FAA forecloses such review. *See T.Co Metals,* 592 F.3d at 339; *ReliaStar Life Ins. Co.,* 564 F.3d at 86.

Finally, the Partial Dissent underscores that the issue was squarely considered, not ignored. Arbitrator Tsimis articulated a competing view of the notice provisions and their effect on damages, which the majority necessarily rejected by adopting a different construction of the contracts and the consequences of JMB's conduct. Such disagreement confirms that the Panel was engaged in contract interpretation—the very type of decision-making that is entirely insulated from judicial second-guessing under the manifest-disregard doctrine.

### 4. JMB's "Speculation" Argument Again Seeks Merits Review, Not Manifest-Disregard Relief

JMB's conclusory assertion that the Panel engaged in impermissible "speculation" about whether Unico would have exercised additional option periods does not establish manifest

disregard of the law. The relevant inquiry is not whether the Court agrees with the Panel's damages analysis, or the inferences which it drew, but whether the Panel knowingly refused to apply a clearly governing legal principle. The Award shows the opposite. The Panel expressly acknowledged the requirement that damages be proven with reasonable certainty and determined—based on the evidentiary record and its interpretation of the Bareboat Charters—that Unico met that standard. *See* Award at 70–73, ECF No. 4-2.

Nor does JMB's labeling of the Panel's reasoning as "speculation" alter the analysis. The evidentiary record included unrebutted testimony from Unico's witness that Unico intended to exercise the remaining option periods under the ATB 205 and ATB 220 charters but for JMB's termination and withdrawal of the Vessels. The Panel was entitled to credit that unrebutted testimony, along with other record evidence bearing on causation and expectancy, in assessing damages. Arbitrators are not required to explain their reasoning or cite specific testimony in a final award, and an award must be confirmed so long as a justifiable factual basis for the arbitrator's conclusions can be inferred from the record. *See D.H. Blair & Co., Inc.,* 462 F.3d at 110; *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991).

JMB's authorities addressing the speculative nature of damages for unexercised option periods address a different legal inquiry. *See* JMB Mem. at 20, ECF No. 5. Those cases concern whether a plaintiff ultimately satisfied its burden under substantive contract or damages law; they do not hold that an arbitrator manifestly disregards the law by concluding—on the facts presented—that expectancy damages are recoverable notwithstanding non-exercise or non-strict compliance with option notice provisions, particularly where the arbitrator finds that the counterparty's breach eliminated the opportunity to exercise those options. *See, e.g.*, *Bergheim v. Sirona Dental Sys., Inc.*, 711 F. App'x 43, 46 (2d Cir. 2017) (denying vacatur where the movant's

[15]

challenge to damages rested on disagreement with the arbitrator's factual findings). At most, JMB's cases reflect disagreement with the Panel's application of damages principles to the evidentiary record. Such disagreement does not amount to manifest disregard. *See, T.Co Metals, LLC*, 592 F.3d at 339; *ReliaStar Life Ins. Co.,* 564 F.3d at 86.

Finally, JMB's reliance on New York cases governing lost profits for new businesses is misplaced. The Panel did not ignore the reasonable-certainty requirement; it acknowledged and applied that principle to the record before it. Because the Award reflects consideration and application of the governing damages principles—not a conscious refusal to apply the law—JMB's "speculation" argument fails as a matter of law.

JMB has wholly failed to carry its burden to establish manifest disregard of the law. Even a cursory review of the Award confirms that the Panel engaged in reasoned decision-making grounded in the parties' contracts and the evidentiary record, and that the Award is supported by at least a barely colorable justification. JMB's effort to vacate the Award therefore represents "precisely the kind of second bite at the apple that the exacting and narrow standard of review for arbitration awards is designed to prevent." *Kerr v. John Thomas Fin.*, No. 14-cv-9168 (KBF), 2015 U.S. Dist. LEXIS 92684, at *13, 2015 WL 4393191 (S.D.N.Y. July 16, 2015). Accordingly, JMB's motion to vacate should be denied and the Award confirmed.

### D.  JMB CANNOT SHOW EVIDENT PARTIALITY OR MISCONDUCT (FAA § 10(a)(2))

Adverse rulings, differential outcomes, or disagreement with an arbitrator's reasoning do not constitute evident partiality. Under Second Circuit law, evident partiality exists only where a reasonable person would have to conclude, based on objective evidence, that an arbitrator was biased—not where a party merely disagrees with how the arbitrators resolved disputed contractual provisions or weighed the evidence. *See Morelite Constr. Corp. v. N.Y. City Dist. Council*

*Carpenters*, 748 F.2d 79, 84 (2d Cir. 1984); *Scandinavian Reinsurance Co. v. Saint Paul Fire &
Marine Ins. Co.*, 668 F.3d 60, 72–75 (2d Cir. 2012); *Certain Underwriting Members of Lloyds of
London v. Fla. Dep't of Fin. Servs.*, 892 F.3d 501, 507 (2d Cir. 2018). Courts therefore require
"something more than the mere appearance of bias" and will not infer partiality from the substance
of an arbitral award itself. *Id*.

JMB's effort to recast alleged "asymmetry" in the Panel's reasoning as evident partiality is
legally defective. The Second Circuit has repeatedly rejected the notion that a purported pattern of
adverse rulings, uneven enforcement of contractual provisions, or differential treatment of
arguments—without more—can establish evident partiality. *Scandinavian Reinsurance Co.*, 668
F.3d at 72–75; *Fla. Dep't of Fin. Servs.*, 892 F.3d at 507; *see also EB Safe, LLC v. Hurley*, 1:17-
CV-06163 (ALC), 2018 U.S. Dist. LEXIS 82034, at *15–18, 2018 WL 2225003 (S.D.N.Y. May
15, 2018) (Carter, J.). If disagreement with how arbitrators construed contracts or applied standards
in differing factual contexts were sufficient, the evident-partiality doctrine would collapse into
routine merits review. It does not. Evident partiality requires objective evidence of bias extrinsic
to the arbitral decision-making process—such as an undisclosed relationship, financial interest, or
other improper incentive—not inferences drawn from the outcome or reasoning of the award.

Consistent with that principle, evident-partiality claims typically involve allegations of a
concrete motive for an arbitrator to favor one party over another. *See, e.g., Scandinavian
Reinsurance*, 668 F.3d at 72 (evident partiality may be found where an arbitrator fails to disclose
a relationship or interest strongly suggestive of bias). Here, JMB identifies no such motive. It does
not allege—nor could it—that any arbitrator had an undisclosed relationship with Unico, a
financial interest in the outcome, or any other improper connection to the parties. Nor does JMB

[17]

demonstrate any causal connection between alleged arbitrator conduct and the Award adverse to its interests. Absent such a showing, evident partiality cannot be established as a matter of law.

The record instead reflects a full and fair arbitration, including extensive briefing, hearings, and reasoned deliberation by a three-member panel. The fact that the Panel enforced contractual provisions strictly in some contexts and interpreted their operation differently in others does not support an inference of bias; it reflects the exercise of arbitral judgment. Arbitrators are permitted to construe different provisions differently based on their text, function, and the factual posture created by the parties' conduct. Even assumed inconsistency in contractual interpretation does not suggest partiality, let alone compel the conclusion that a reasonable person would have to find bias.

Courts have expressly rejected attempts to string together adverse rulings and relabel them as "systematic partiality," as doing so would impermissibly convert the FAA's narrow vacatur authority into de novo review of arbitral decision-making. *See, e.g., Pers. Staffing Grp., LLC v. XL Ins. Am., Inc.*, 2024 U.S. Dist. LEXIS 200053, at *24–28, 2024 WL 4667253 (S.D.N.Y. Nov. 4, 2024). JMB's argument follows precisely that forbidden path: it works backward from the outcome of the arbitration and asserts that the Panel's reasoning must reflect bias. That approach is foreclosed by Second Circuit precedent.

In short, JMB's evident-partiality claim rests entirely on disagreement with the Panel's reasoning and conclusions, not on any objective evidence of bias, improper motive, or undisclosed relationship. Because the Award reflects engagement with the parties' arguments, consideration of the evidence, and reasoned application of the governing contracts and legal principles, there is no basis for vacatur under FAA § 10(a)(2).

[18]

### E.  PUBLIC POLICY DOES NOT SUPPORT VACATUR

Vacatur on public-policy grounds is "extraordinarily narrow" and applies only where enforcement of an arbitration award would violate an explicit, well-defined, and dominant public policy, ascertained by reference to laws and legal precedents—not economic predictions or generalized notions of fairness. *See Misco*, 484 U.S. at 43; *A&G Coal Corp.*, 2013 U.S. Dist. LEXIS 71936 at *23.

JMB identifies no such policy.[3] Instead, it advances a series of speculative assertions about how the Panel's damages award might affect future contracting behavior in the maritime and equipment-rental markets. Such predictions—even if credited—do not constitute public policy within the meaning of the FAA and cannot support vacatur. Courts do not invalidate arbitration awards based on asserted economic consequences or industry-wide hypotheticals. *See Misco*, 484 U.S. at 44. Courts in this District have rejected precisely this attempt to recast disagreement with an arbitral award as a public-policy violation, holding that such arguments amount to "the kind of second bite at the apple that the exacting and narrow standard of review for arbitration awards is designed to prevent." *Kerr*,  2015 U.S. Dist. LEXIS 92684, at *13, 2015 WL 4393191.

For the same reason, JMB's public-policy challenge fails because it identifies no "well defined and dominant" public policy that would be violated by enforcement of the Award. *See Kerr*,  2015 U.S. Dist. LEXIS 92684, at *12 (rejecting public-policy challenges grounded in "general considerations of supposed public interests"). JMB's argument thus merely repackages

---

[3] JMB relies on New York state arbitration decisions, including *Sprinzen v. Nomberg*, 46 N.Y.2d 623 (1979), and *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354 (1976), to argue that public policy warrants vacatur. Those cases arise under New York's Civil Practice Law and Rules ("CPLR") and do not supply independent grounds for vacating an award governed by the Federal Arbitration Act. Under the FAA, the statutory grounds for vacatur are exclusive and may not be expanded by state-law public-policy doctrines. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008); *Duferco*, 333 F.3d at 389–90.

disagreement with the Panel's reasoning and outcome as a public-policy objection, an approach foreclosed by settled Supreme Court and Second Circuit precedent.

JMB's reliance on New York state arbitration decisions and doctrines, including prohibitions on punitive damages, is misplaced. This case is governed by the FAA, under which state public-policy limitations do not supply independent grounds for vacatur. *See Hall Street Assocs.*, 552 U.S. at 584; *Duferco,* 333 F.3d at 389–90. The Award did not impose punitive damages, and instead awarded compensatory lost-profit damages based on the Panel's findings regarding breach and causation.

Nor does JMB's flawed attempt to characterize the Award as "rewriting" the contracts advance its contention. Whether the Panel correctly interpreted the option provisions and allocated risk under the Bareboat Charters is a merits question properly entrusted to the arbitrators. Public policy does not authorize courts to vacate an arbitration award because they disagree with an arbitrator's contract construction or damages assessment. *See Duferco*, 333 F.3d at 389–90.

Finally, JMB's request that the Court partially vacate the Award and adopt the dissent's damages calculation underscores the impropriety of its position. The FAA does not permit courts to select among competing arbitral views or to rewrite awards under the guise of public policy.

Because enforcement of the Award would not violate any explicit, well-defined, and dominant public policy, JMB's public-policy challenge fails as a matter of law.

### F.  THE COURT SHOULD CONFIRM THE ATB 205 AND ATB 220 AWARDS

The ATB 205 and ATB 220 Awards finally resolved all issues submitted to arbitration and are therefore entitled to confirmation. Under the Federal Arbitration Act, confirmation is mandatory unless the party opposing confirmation establishes one of the statute's narrow grounds for vacatur. 9 U.S.C. § 9. JMB has failed to make that showing.

As demonstrated above, the Panel acted squarely within the scope of its authority, construed and applied the Bareboat Charters, and resolved the parties' disputes based on a well-developed evidentiary record. JMB's petition is nothing more than an after the fact disagreement with the Panel's contract interpretation, factual findings, and damages analysis—precisely the type of merits-based objections the FAA forbids courts from revisiting. Where, as here, arbitrators have arguably construed the parties' agreement and rendered a final and definite award, the Court must confirm the award even if it would have reached a different result. *See ReliaStar Life Ins. Co.,* 564 F.3d at 86.

Partial vacatur is likewise unwarranted. Courts in this District have repeatedly recognized that partial vacatur is appropriate only where an award contains a discrete, severable defect falling within § 10(a). That is not the case here. JMB's request to vacate only the damages awarded for certain option periods rests on the same rejected premise—that the Panel exceeded its authority or disregarded governing law in interpreting the Bareboat Charters. Because the Panel acted within its authority and committed no misconduct or manifest disregard, there is no basis to excise any portion of the Award. *See Ace Am. Ins. Co. v. Christiana Ins. LLC,* 2012 U.S. Dist. LEXIS 51863, at *21, 2012 WL 1232972 (S.D.N.Y. Apr. 12, 2012).

Accordingly, the Court should deny JMB's petition to vacate and grant Unico's cross-motion confirming the ATB 205 and ATB 220 Awards in their entirety.

### G.  The ATB 284 Award Is Not in Dispute and May Be Confirmed

Unico does not oppose confirmation of the arbitration award relating to ATB 284. As JMB correctly notes, confirmation under the Federal Arbitration Act is a summary proceeding, and absent grounds for vacatur, modification, or correction under §§ 10 or 11 of the FAA, a court must confirm a final arbitration award. 9 U.S.C. § 9.

[21]

The ATB 284 award arose from a discrete and materially different dispute, under a separate contract, than those involving the ATB 205 and ATB 220. With respect to ATB 284, the Panel found that Unico redelivered the Vessels prior to the expiration of the contractual base term and therefore breached the applicable bareboat charter. Based on that finding, the Panel awarded JMB damages for early redelivery, together with interest and attorneys' fees. Unico does not challenge those determinations.

Nothing about the ATB 284 award bears on the legal or factual issues presented by JMB's petition to vacate the ATB 205 and ATB 220 awards. The ATB 284 dispute did not involve termination or withdrawal by JMB, did not implicate questions concerning continuation of the charter relationship, and did not present claims for expectancy damages tied to option periods. The Panel's resolution of ATB 284 therefore does not provide any support for JMB's effort to vacate or modify the separate awards issued for ATB 205 and ATB 220, which arose from different conduct, different contractual postures, and different claims.

JMB correctly observes that the Award contains a clerical error identifying "Unico," rather than JMB, as the recipient of interest and attorneys' fees awarded in connection with ATB 284. JMB Mem. at 4, n.5, ECF No. 5. That scrivener's error may be corrected by the Court pursuant to 9 U.S.C. § 11(a) at the time of confirmation.

Accordingly, the Court may confirm the ATB 284 award as corrected, while separately denying JMB's petition to vacate and granting Unico's cross-motion to confirm the ATB 205 and ATB 220 awards in their entirety.

## CONCLUSION

For the foregoing reasons, and consistent with this Court's and the Second Circuit's arbitration jurisprudence, the Court should deny JMB's Petition to Vacate and grant Unico Marine Services LLC's Cross Petition to Confirm the Award.

Dated: February 6, 2026
      New York, New York

               **LENNON, MURPHY & PHILLIPS, LLC**

               By:   ***Kevin J. Lennon***
                   Kevin J. Lennon, Esq.
                   Patrick F. Lennon, Esq.
                   Steven R. Williams, Esq.
                   Elliott T. Williams, Esq.
                   420 Lexington Ave., Suite 300
                   New York, NY 10170
                   Phone: (212) 490-6050
                   Fax:    (212) 490-6070
                   Email:  klennon@lmplaw.net
                            plennon@lmplaw.net
                            swinters@lmplaw.net
                            elliott.williams@lmplaw.net

                   *Attorneys for Respondent*
                   *UNICO MARINE SERVICES LLC*

**CERTIFICATION**

I hereby certify that on this 6th day of February, 2026, I caused a true and correct copy of the foregoing MEMORANDUM OF LAW to be filed electronically with the Clerk of the Court using the CM/ECF system.

Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record who are registered ECF users, and such filing constitutes service pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Civil Rule 5.2.

HOLLAND & KNIGHT LLP
787 Seventh Avenue
31st Floor
New York, New York 10019
Vincent J. Foley, Esq.(vincent.foley@hklaw.com)
Marie E. Larsen, Esq. (marie.larsen@hklaw.com)

*Attorneys for Petitioners*
*JMB Shipping ATB 205, LLC*
*JMB Shipping ATB 220, LLC*
*JMB Shipping ATB 284, LLC*

***/s/ Kevin J. Lennon***
Kevin J. Lennon

[24]

**CERTIFICATION OF WORD COUNT**

Pursuant to Local Civil Rule 7.1(d) of the United States District Court for the Southern District of New York, I hereby certify that this memorandum of law contains 6,999 words, exclusive of the table of contents, table of authorities, signature block, certification of service, and certification of word count. This word count was determined using the word-count function of Microsoft Word.

Dated: February 6, 2026
New York, New York

*/s/ Kevin J. Lennon*
Kevin J. Lennon