**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JMB SHIPPING ATB 205, LLC, JMB SHIPPING 220, LLC, and JMB SHIPPING ATB 284, LLC,<br><br>                          Petitioners,<br><br>          v.<br><br>UNICO MARINE SERVICES LLC,<br><br>                       Respondent. | Civil Action No. 1:26-cv-416 (ALC)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN OPPOSITION TO UNICO'S CROSS-PETITION TO CONFIRM AND REPLY IN FURTHER SUPPORT OF JMB'S PETITION TO VACATE IN PART THE ARBITRATION AWARD**

HOLLAND & KNIGHT LLP
Vincent J. Foley
Marie E. Larsen
787 Seventh Avenue, 31st Floor
New York, NY 10019
vincent.foley@hklaw.com
marie.larsen@hklaw.com

*Attorneys for JMB Shipping ATB 205, LLC, JMB Shipping ATB 220, LLC, and JMB Shipping ATB 284, LLC*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................... 3

    A. The Panel Exceeded Its Powers Under the FAA by Awarding Damages for
Unexercised Option Periods ....................................................................................... 3

        1. The Standard for Vacatur Under § 10(a)(4)....................................................... 3

        2. The Panel Exceeded Its Authority by Waiving Unambiguous Contractual Notice
Requirements ........................................................................................................... 4

        3. Unico's Response Fails to Address the Threshold Authority Question ........... 5

        4. The Partial Dissent Confirms the Majority's Overreach ................................. 6

        5. Without a Valid Contract Governing the Extension Periods, the Majority Was Not
Authorized to Award Damages.................................................................................. 7

    B. The Award Reflects Manifest Disregard of Clearly Governing Law ................................. 8

        1. The Standard for Manifest Disregard ............................................................... 8

        2. The Notice Requirements Were "Well Defined, Explicit, and Clearly Applicable"...... 9

        3. The Panel Knew the Governing Legal Principle and Refused to Apply It ..................... 9

        4. JMB's Argument Is Not a Merits Review ....................................................... 11

        5. The Damages for Unexercised Options Were Speculative and Unfounded ................. 12

    C. The Panel Demonstrated Evident Partiality in Favor of Unico......................................... 14

        1. The Standard for Evident Partiality ............................................................... 14

        2. The Panel's Asymmetric Application of Contractual Standards Demonstrates
Partiality.................................................................................................................. 15

        3. The Disparate Treatment Cannot Be Reconciled with Neutral Adjudication.............. 16

        4. The Pattern of Decision-Making Compels a Finding of Partiality ............................. 17

        5. Unico's Response Fails to Address the Asymmetry...................................... 18

    D. JMB's Public Policy Concerns Remain Valid Despite Unico's Arguments .................... 19

        1. Public Policy Supports JMB's Statutory Grounds for Vacatur ................................. 19

        2. The Award Violates Established Contract Law Principles........................................ 20

        3. Unico's Response Fails to Address JMB's Public Policy Concerns .......................... 20

    E. The Court Should Deny Unico's Cross-Petition to Confirm the ATB 205 and ATB
220 Awards ............................................................................................................... 21

        1. Confirmation Is Not Mandatory Where Grounds for Vacatur Exist.......................... 22

        2. JMB Has Demonstrated Multiple Grounds for Vacatur ............................................ 22

        3. Unico's Arguments Do Not Overcome JMB's Showing............................................ 23

    F. The ATB 284 Award Should Be Confirmed and the Clerical Error Corrected.................. 24

        1. Both Parties Agree That the ATB 284 Award Should Be Confirmed........................ 24

CONCLUSION............................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashland Mgmt. Inc. v. Janien*,
  82 N.Y.2d 395 (1993) ........................................................................................................12

*Banco de Seguros del Estado v. Mut. Marine Off., Inc.*,
  344 F.3d 255 (2d Cir. 2003)..............................................................................................5, 8

*Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs.*,
  892 F.3d 501 (2d Cir. 2018)...............................................................................................14

*Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co.*,
  990 F. Supp. 304 (S.D.N.Y. 1998) .............................................................................3, 4, 11

*D.H. Blair & Co., Inc. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006)................................................................................................22

*Davis v. Chevy Chase Fin., Ltd.*,
  667 F.2d 160 (D.C. Cir. 1981) ............................................................................................4

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
  333 F.3d 383 (2d Cir. 2003)...........................................................................................8, 12

*E. Coast Res., LLC v. Town of Hempstead*,
  707 F. Supp. 2d 401 (E.D.N.Y. 2010) .................................................................................7

*Garrity v. Lyle Stuart, Inc.*,
  40 N.Y.2d 354 (1976)........................................................................................................21

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
  552 U.S. 576 (2008)...........................................................................................................22

*Harry Hoffman Printing v. Graphic Communications International Union*,
  950 F.2d 95 (2d Cir. 1991)................................................................................................11

*Interfilm, Inc. v. Advanced Exhibition Corp.*,
  249 A.D.2d 242 (1st Dep't 1998) ......................................................................................21

*Jock v. Sterling Jewelers Inc.*,
  646 F.3d 113 (2d Cir. 2011)................................................................................................8

*Kenford Co. v County of Erie*,
  67 N.Y.2d 257 (1986) ........................................................................................................13

*Kingsbridge Med. Ctr., P.C. v. Hill*,
  357 F. Supp. 2d 754 (S.D.N.Y. 2005)......................................................................20

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
  729 F.3d 99 (2d Cir. 2013)......................................................................................14

*In re Livermore-Johnson (N.Y.S. Dep't of Corr. & Cmty. Supervision)*,
  155 A.D.3d 1391 (3d Dep't 2017).............................................................................20

*Mehta v. N.Y. City Dep't of Consumer Affs.*,
  162 A.D.2d 236 (1st Dep't 1990) .............................................................................12

*Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters*,
  748 F.2d 79 (2d Cir. 1984)...................................................................3, 14, 15, 18

*N.Y. Tel. Co. v. Commc'ns Workers of Am. Loc. 1100*,
  256 F.3d 89 (2d Cir. 2001).......................................................................................8

*Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*,
  86 N.Y.2d 685 (1995) ..............................................................................................9

*Oxford Health Plans LLC v. Sutter*,
  569 U.S. 564 (2013)......................................................................................3, 23, 24

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*,
  564 F.3d 81 (2d Cir. 2009).................................................................................5, 24

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*,
  668 F.3d 60 (2d Cir. 2012).................................................................................14, 18

*Schiller v. N.Y. City Tr. Auth.*,
  300 A.D.2d 296 (2d Dep't 2002)..............................................................................13

*Schwartz v. Merrill Lynch & Co., Inc.*,
  665 F.3d 444 (2d Cir. 2011)..................................................................................2, 7

*Sprinzen v. Nomberg*,
  46 N.Y.2d 623 (1979) ...............................................................................................21

*ST Microelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*,
  648 F.3d 68 (2d Cir. 2011)........................................................................................8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)......................................................................................... *passim*

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
  592 F.3d 329 (2d Cir. 2010)......................................................................................8

*United Paperworkers Int'l Union v. Misco, Inc.*,
    484 U.S. 29 (1987)..................................................................................................................19

*Wallace v. Buttar*,
    378 F.3d 182 (2d Cir. 2004)...............................................................................................8, 11

**Statutes**

9 U.S.C. § 9............................................................................................................................22

9 U.S.C. § 10..........................................................................................................................22

9 U.S.C. § 10(a) ......................................................................................................................7

9 U.S.C. § 10(a)(2)...................................................................................................1, 14, 19, 23

9 U.S.C. § 10(a)(4)............................................................................ *passim*

9 U.S.C. § 11..........................................................................................................................22

9 U.S.C. § 11(a) .....................................................................................................................25

JMB Shipping ATB 205, LLC, JMB Shipping ATB 220, LLC, and JMB Shipping ATB 284, LLC (collectively, "JMB") respectfully submit this memorandum of law in opposition to Respondent Unico Marine Services LLC's ("Unico") Cross-Petition to Confirm and Reply in Further Support of JMB's Petition to Vacate the Arbitration Award.

## PRELIMINARY STATEMENT

This case presents a fundamental question: whether an arbitration panel may award millions of dollars in damages for contractual option periods that were never exercised, based on unfounded speculation that the charterer "would have" exercised those options, despite uncontroverted evidence that the charterer never provided the mandatory written notice required by the Bareboat Charter ("BC") to exercise the option periods. JMB respectfully submits that it may not.

JMB seeks partial vacatur of the ATB 205 and ATB 220 Awards under the Federal Arbitration Act on three grounds: the Panel exceeded its powers (9 U.S.C. § 10(a)(4)); the Panel demonstrated evident partiality (9 U.S.C. § 10(a)(2)); and the Award reflects manifest disregard of governing law known to the Panel. JMB also seeks confirmation of the ATB 284 Award, which both parties agree should be confirmed, with correction of a clerical error.

Unico mischaracterizes JMB's petition as an impermissible "merits review." Unico Br. [Dkt. No. 16] at 1, 4. However, JMB does not challenge whether the Panel correctly decided submitted issues; JMB challenges whether the Panel had authority to create new contractual obligations the parties never undertook and to award speculative damages for option periods for which no valid contract existed. An arbitrator's authority does not extend to creating contractual rights out of whole cloth. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 (2010).

The facts are undisputed. The BCs required Unico to provide written notice "not later than forty-five (45) days before the end of the then-existing period" to exercise each option period under Clause 5(c). Declaration of Vincent J. Foley ("Foley Decl."), Ex. 1 [Dkt. No. 4-1–4-2] ("Award") at 15-16; Foley Decl., Ex. 4 [Dkt. No. 4-5] (ATB 205 BC); Foley Decl., Ex. 2 [Dkt. No. 4-3] (ATB 220 BC). Unico exercised only the first option period; the Panel found that Unico never provided written notice for option periods 2 through 6. Award at 70, 82. Yet the majority awarded Unico damages for all six option periods based on speculation that Unico "would have" exercised the remaining options. Award at 70.

Arbitrator Tsimis's partial dissent confirms the majority's error, emphasizing that "[w]ithout such notice, there is no valid contractual predicate under the express language of the BCs for Unico Marine to request an award for damages for any subsequent option periods." Award at 82. As the dissent observed, Unico demonstrated that providing notice remained possible after termination: Unico exercised the first option on November 12, 2021, after JMB terminated the BCs and after arbitration commenced. Award at 81-82; *see also* Foley Decl., Ex. 7 [Dkt. No. 4-8]. If Unico could comply for the first option, it could have done so for options 2 through 6, yet Unico willfully chose not to exercise those options.

The majority's justification (that it was "unrealistic to expect" Unico to provide notices for options 2 through 6) is not contract interpretation; it is contract rewriting. Award at 70. The Panel cited no legal authority permitting arbitrators to disregard unambiguous contractual notice requirements based on subjective views of practicality. This is manifest disregard: the Panel acknowledged the governing legal principle and consciously refused to apply it. *See Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451-52 (2d Cir. 2011).

The Panel's evident partiality is demonstrated by its asymmetric application of contractual standards. When analyzing JMB's termination notice to Unico under Clause 20, the Panel held

2

that the written notice requirement was "unambiguous and clear" and strictly enforced it against JMB. Award at 64. Yet when analyzing Unico's failure to comply with Clause 5(c)'s equally unambiguous notice requirement, the majority excused noncompliance as "unrealistic." Award at 70. This disparate treatment reflects decision-making favoring one side. *See Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters*, 748 F.2d 79, 84 (2d Cir. 1984).

The Court should vacate the ATB 205 and ATB 220 Awards, deny Unico's Cross-Petition to confirm those Awards, and confirm the ATB 284 Award with correction of the clerical error.

## ARGUMENT

The majority's Award rests on a single premise: that Unico would have exercised option periods 2 through 6.  But the contract required written notice from Unico to exercise those option periods. The Panel found no such notice was given. Instead of enforcing the contractual condition precedent, the majority excused it as "unrealistic," exceeding the Panel's authority, disregarding governing law, and awarding damages for contractual periods that never existed.

## A. The Panel Exceeded Its Powers Under the FAA by Awarding Damages for Unexercised Option Periods

### 1. The Standard for Vacatur Under § 10(a)(4)

The Federal Arbitration Act provides that an arbitration award may be vacated "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). While courts accord this provision a narrow reading, an award cannot stand where arbitrators stray from the agreement and dispense their "own brand of industrial justice." *Stolt-Nielsen S.A.*, 559 U.S. at 671; *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). When arbitrators rewrite contractual terms rather than interpret them, the award exceeds their authority. *See Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co.*, 990 F. Supp. 304, 311 (S.D.N.Y. 1998).

Unico mischaracterizes JMB's petition as an impermissible "merits review." Unico Br. at 4. JMB does not challenge whether the Panel correctly interpreted the Bareboat Charters; rather,

JMB challenges whether the Panel had authority to award damages for option periods that were indisputably never exercised because Unico failed to satisfy express contractual conditions precedent, particularly given the uncertainty of Unico's operating future. Unico had already returned one vessel, was suffering significant operating losses and was perpetually delinquent in its BC payments. This is precisely the threshold authority question that § 10(a)(4) addresses. *See Davis v. Chevy Chase Fin., Ltd.*, 667 F.2d 160, 165 (D.C. Cir. 1981).

### 2. The Panel Exceeded Its Authority by Waiving Unambiguous Contractual Notice Requirements

The Panel exceeded its authority by waiving unambiguous contractual notice requirements and awarding damages during the unexercised extension periods. Clause 5(c) required Unico to commit to a new contract period by written notice "not later than forty-five (45) days before the end of the then-existing period.". Award at 15-16; Foley Decl., Ex. 4 [Dkt. No. 4-5] (ATB 205 BC at Clause 5(c)); Foley Decl., Ex. 2 [Dkt. No. 4-3] (ATB 220 BC at Clause 5(c)). It is undisputed that Unico never provided written notice for option periods 2 through 6. Award at 70, 82. Yet the majority awarded damages for all six option periods (three years of hypothetical charter hire), concluding it was "unrealistic to expect" Unico to provide such notices. Award at 70.

This is not contract interpretation; it is contract rewriting. The Panel acknowledged Unico's noncompliance and then excused it based on its subjective views of practicality, citing no legal authority permitting arbitrators to disregard unambiguous contractual requirements. *See Stolt-Nielsen S.A.*, 559 U.S. at 672 (arbitrators exceed powers when imposing their own policy preferences); *Clarendon Nat'l Ins. Co.*, 990 F. Supp. at 311 (vacating damages awarded in contravention of express contract terms).

Unico attempts to distinguish *Stolt-Nielsen* by arguing that the arbitrators in that case "disclaimed reliance on the contract," whereas here the Panel "grounded its decision in the text

4

and operation of the parties' agreements." Unico Br. at 12-13. This distinction collapses upon examination. In *Stolt-Nielsen*, the arbitrators "ma[d]e a few references to [the contracting parties'] intent" before imposing their policy preference. The Supreme Court nonetheless vacated because the panel "simply imposed its own conception of sound policy." 559 U.S. at 675-76. Here, the Panel similarly acknowledged the notice requirement, quoted its terms, and then declared it unenforceable based on the majority's view of what was "realistic," without citing any legal doctrine excusing Unico's noncompliance. The Panel's unsupported reasoning that it was "unrealistic to expect" Unico to provide notices is indistinguishable from the policy imposition condemned in *Stolt-Nielsen*.

While Unico invokes the principle that courts must confirm awards where arbitrators are "even arguably construing or applying the contract," *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009), that standard presupposes the arbitrators engaged in construction rather than wholesale nullification of express contractual terms. When arbitrators acknowledge an unambiguous contractual requirement and then declare it inapplicable based on their subjective assessment of "practicality," they have crossed the line from interpretation to imposition of their own untethered personal preferences; precisely the conduct *Stolt-Nielsen* identifies as exceeding arbitral authority. 559 U.S. at 672.

### 3. Unico's Response Fails to Address the Threshold Authority Question

Unico argues that broad arbitration clauses authorized the Panel to decide "any controversy" under the BCs. Unico Br. at 5. But such clauses only grant authority to *decide disputes arising under the contract*, not to rewrite and extend contractual option periods. *See ReliaStar Life Ins. Co.,* 564 F.3d at 86; *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 262 (2d Cir. 2003). The majority did not "interpret" the notice provisions; it disregarded them entirely, relieving Unico of the obligation to commit itself to the new option periods. Award

at 70. There was no ambiguity: Clause 5(c) required written notice; Unico did not provide it; the options were never exercised.

Indeed, Clause 24 of the BCs, governing arbitration of disputes, limits the scope of contract interpretation: "[T]his AGREEMENT contains the entire understanding between the parties hereto regarding the charter memorialized herein." The Panel could interpret the BC but was not authorized to impose or relieve obligations during unexercised option periods.

Unico's assertion that the Panel applied principles of excuse or waiver fails. Unico Br. at 6, 11. The Panel did not find that JMB waived the notice requirement under any recognized legal doctrine. As Arbitrator Tsimis observed in dissent, Unico demonstrated that providing written notice remained possible after termination.  Indeed, Unico was credited by the Panel with exercise of the first option period on November 12, 2021, *after* JMB had terminated the BCs and *after* the arbitration commenced. Award at 81-82; Foley Decl., Ex. 7 [Dkt. No. 4-8]. If Unico could comply with its contractual obligations to exercise the first option under those circumstances, it could have done so for options 2 through 6. Unico made a deliberate business decision not to exercise the remaining options and should be precluded from recovery of a guaranteed three-year revenue stream. Award at 83.

### 4. The Partial Dissent Confirms the Majority's Overreach

Arbitrator Tsimis's partial dissent confirms the majority's overreach, concluding that "Unico Marine did not satisfy this requirement of giving 45 days' advance notice" and that "[w]ithout such notice, there is no valid contractual predicate under the express language of the BCs for Unico Marine to request an award for damages for any subsequent option periods." Award at 82. Arbitrator Tsimis noted "the lack of any case law or arbitration awards that are directly on point" and characterized the majority's approach as "far more speculative, remote, and simply 'a bridge too far.'" Award at 82, 84. The dissent emphasized that it is "not the Panel's mandate to

6

read in or imply such rights into a contract that has clear and unambiguous terms regarding its base term and the manner in which such subsequent option periods must be exercised." Award at 86. Unico's brief states nothing to counter this point. The detailed dissent confirms that the majority was presented with clearly governing law and consciously departed from the contract, precisely the type of evidence supporting vacatur.

### 5. Without a Valid Contract Governing the Extension Periods, the Majority Was Not Authorized to Award Damages

Because Unico never exercised the option periods, no contract existed for those periods, and "[a] prerequisite to recovering such damages . . . is the existence of a valid contract." *E. Coast Res., LLC v. Town of Hempstead*, 707 F. Supp. 2d 401, 409 (E.D.N.Y. 2010). The Panel had authority to interpret the BCs, but had no authority to create contractual obligations.

The Panel's approach fundamentally altered the parties' negotiated risk allocation. Unico structured its obligations using six-month terms with successive options, limiting its exposure. Award at 83-84; Foley Decl., Ex. 4 [Dkt. No. 4-5] (ATB 205 BC at Clause 5); Foley Decl., Ex. 2 [Dkt. No. 4-3] (ATB 220 BC at Clause 5). Having elected limited short-term commitments, Unico should not be allowed to have the majority retroactively convert its base term six-month obligation into a multi-year entitlement through the majority's speculation about what Unico "would have" done.[1] Award at 70. Allowing such a result converts a unilateral privilege (i.e. the option periods) into a guaranteed revenue stream. For these reasons, the Panel exceeded its authority, implicating § 10(a)(4), and the ATB 205 and ATB 220 Awards must be vacated to deny damages during option periods 2-6.

---

[1] This point is further emphasized by the fact that Unico did exercise the first option periods post JMB's seizure of the vessels. Award at 69-70. Unico could have easily exercised all of the option periods at once, or as they came due, but deliberately chose not to in order to limit its potential liability to JMB had the Panel ruled differently. Unico seeks to "have its cake and eat it too" by receiving damages for periods to which it refused to commit.

## B. The Award Reflects Manifest Disregard of Clearly Governing Law

### 1. The Standard for Manifest Disregard

The Second Circuit recognizes "manifest disregard of the law" as a judicial gloss on the statutory grounds for vacatur under FAA § 10(a). *Schwartz*, 665 F.3d at 451. Vacatur is appropriate where the record demonstrates that the arbitrator knew the governing law and consciously chose to ignore it. *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010). To vacate an award for manifest disregard, the movant must show: (1) the arbitrator was aware of a clearly governing legal principle yet refused to apply it or ignored it altogether; and (2) the disregarded law was "well defined, explicit, and clearly applicable" to the dispute. *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 n.1 (2d Cir. 2011); *Banco de Seguros del Estado*, 344 F.3d at 263.

While the doctrine is limited and gives deference to arbitrators, it remains available for "rare instances where some egregious impropriety on the part of the arbitrators is apparent." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004); *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). Courts will vacate an award "when a party clearly demonstrates that the panel intentionally defied the law." *ST Microelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (citations omitted).

Unico's assertion that manifest disregard is "exceedingly rare" and a "doctrine of last resort" (Unico Br. at 10) does not immunize awards that consciously depart from unambiguous contractual terms. Where arbitrators acknowledge a governing legal principle and then expressly decline to apply it, vacatur is warranted. *See N.Y. Tel. Co. v. Commc'ns Workers of Am. Loc. 1100*, 256 F.3d 89, 91 (2d Cir. 2001) (vacating award where arbitrator cited controlling precedent but explicitly declined to apply it).

### 2. The Notice Requirements Were "Well Defined, Explicit, and Clearly Applicable"

The first prong of manifest disregard is easily satisfied here. Clause 5(c) unambiguously required Unico to provide written notice "not later than forty-five (45) days before the end of the then-existing period" to exercise each successive option period. Award at 15-16; Foley Decl., Ex. 4 [Dkt. No. 4-5] (ATB 205 BC at Clause 5(c)); Foley Decl.,  Ex. 2 [Dkt. No. 4-3] (ATB 220 BC at Clause 5(c)). This language could not be clearer: it establishes a mandatory condition precedent to the exercise of any option. The requirement was "well defined, explicit, and clearly applicable" to whether Unico had valid contractual rights to the Additional Option Periods. At no point did the Panel find Clause 5(c) ambiguous.

Unico does not dispute, and cannot dispute, that the contractual requirement was clear. Indeed, Unico concedes that the Panel "acknowledged that Unico did not provide written notice for option periods 2-6." Unico Br. at 6. The notice requirement was undisputed, unambiguous, and directly applicable to the question before the Panel: whether Unico was entitled to damages for option periods it never exercised. The majority did not resolve competing interpretations of Clause 5(c); it acknowledged the provision's clarity and Unico's noncompliance, then declined to enforce it. That is not interpretation, it is abrogation of the contract.

Basic contract law holds that conditions precedent must be satisfied before contractual obligations arise unless excused by specific legal doctrines. Under New York law, which governs the BCs, parties may not claim rights under contracts absent compliance with clearly stated conditions. *See Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995). This principle is fundamental and clearly applicable to Clause 5(c)'s notice requirement.

### 3. The Panel Knew the Governing Legal Principle and Refused to Apply It

The second prong of manifest disregard (subjective knowledge and intentional disregard) is likewise satisfied. The Panel majority expressly acknowledged that Clause 5(c) required written

notice (condition precedent) for the exercise of each option period. Award at 15-16, 70-71. The Panel then acknowledged that Unico did not provide such notice for option periods 2 through 6. Award at 70, 82. Having acknowledged both the governing contractual requirement and Unico's noncompliance, the majority then consciously chose not to apply the requirement, concluding that it was "unrealistic to expect, much less require, Unico to provide notices to exercise options 2 through 6." Award at 70.

This is manifest disregard. The majority did not conclude that Unico had complied with the notice provisions; it acknowledged noncompliance. The majority did not conclude that the notice provisions were ambiguous; it quoted their unambiguous terms. The majority did not apply any recognized legal doctrine (waiver, estoppel, prevention, impossibility) to excuse Unico's noncompliance. Instead, the majority simply declared that enforcing the contract as written would be, in its opinion, "unrealistic" and proceeded to award damages as if Unico had exercised all six option periods.

Neither the Panel nor Unico cited any legal authority (in maritime law, New York contract law, or the parties' agreements) permitting an arbitrator to disregard express and unambiguous contractual notice requirements based on a subjective assessment of their practicality. The absence of any supporting legal authority confirms that the majority's decision was not "contract interpretation" but rather the imposition of the Panel's own view under the circumstances, disregarding what the contract expressly required of Unico. That is precisely what the manifest disregard doctrine prohibits.

Arbitrator Tsimis's dissent confirms that the majority understood the governing legal principle. The dissent systematically analyzed the unambiguous language of Clause 5(c), concluded that "Unico Marine did not satisfy this requirement of giving 45 days' advance notice," and stated unequivocally: "Without such notice, there is no valid contractual predicate under the

express language of the BCs for Unico Marine to request an award for damages for any subsequent option periods." Award at 82. This detailed dissent is powerful evidence that the majority was presented with clearly governing law and consciously chose to depart from it. Award at 81-86.

### 4. JMB's Argument Is Not a Merits Review

Unico repeatedly characterizes JMB's petition as an impermissible "merits review." Unico Br. at 4, 14-16. This misses the mark entirely. Manifest disregard exists precisely to address situations where arbitrators consciously refuse to apply clearly governing law, exactly what occurred here. The doctrine "holds that an arbitral panel's legal conclusions will be confirmed in all but those instances where there is no colorable justification for a conclusion." *Wallace*, 378 F.3d at 193. JMB does not ask this Court to determine whether the Panel correctly weighed the evidence or reached the right result or to engage in a "merits review" of contested factual questions. Rather, JMB challenges whether the Panel could lawfully award damages for contract periods that never came into existence because Unico did not commit to the option period by failing to satisfy express conditions precedent. This is not a merits question; it is a legal question about the outer bounds of arbitral authority. The Second Circuit has consistently recognized this distinction. In *Clarendon*, 990 F. Supp. at 311, the court vacated an award that contradicted express contract terms, on the basis that an arbitrator may not ignore or abandon the plain language of the contract. Similarly, in *Harry Hoffman Printing v. Graphic Communications International Union*, 950 F.2d 95, 98 (2d Cir. 1991), the Second Circuit vacated an award where the arbitrator drew on notions of "due process" rather than on terms of contract. Here, as in those cases, the Panel majority substituted its view of what was "realistic" for what the contract actually required; precisely the type of misconduct that vacatur is designed to remedy.

There is no colorable justification for excusing Unico's failure to comply with the notice provisions for option periods 2-6. Unico's reliance on "prevention" or "futility" doctrines (Unico

11

Br. at 12) is misplaced because Unico could have sent notice at any time before, or even after JMB's alleged wrongful termination, as Unico itself demonstrated by exercising the first option period on November 12, 2021, after JMB had terminated the BCs and after arbitration had commenced. Foley Decl., Ex. 7 [Dkt. No. 4-8]. As Arbitrator Tsimis observed: "Unico Marine nevertheless saw fit to do so to protect its option rights for the January 1, 2022 to June 30, 2022 period under the two BCs, and in accordance with the plain language of Clause 5(a) and (c)." Award at 82. If Unico could comply for the first option under those circumstances, it could have done so for options 2 through 6.[2]

Unico's argument that the Award has a "barely colorable justification" ignores that the Panel deprived the Award of any colorable justification by expressly acknowledging Unico's noncompliance with the notice provisions and then consciously chose to excuse it without legal basis. Unico Br. at 10, 16. "Barely colorable justification" cannot be found where the arbitrator has explicitly acknowledged the governing legal principle and then refused to apply it. *See Duferco*, 333 F.3d at 390-91 (manifest disregard requires more than error, but [an] award cannot stand where arbitrators consciously ignored governing principles).

### 5. The Damages for Unexercised Options Were Speculative and Unfounded

The Panel's manifest disregard extends to its treatment of damages. Lost-profit damages must be proven with "reasonable certainty;" and damages for a new business with a history of operational struggles require a "stricter standard" because such damages are "inherently speculative." *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 404 (1993); *Mehta v. N.Y. City Dep't of Consumer Affs.*, 162 A.D.2d 236, 237 (1st Dep't 1990) (lost profits not recoverable unless the

---

[2] Notably, the majority's argument collapses when considering that Unico could have exercised all of the option periods at the same time it exercised the first. The option periods had to be exercised "not later than forty-five (45) days before the end of the then-existing period." Nothing prevented Unico from exercising all 6 option periods at any time; Unico chose not to do so. Finding that JMB's rechartering of the vessels excused Unico's obligations as "unrealistic" does not explain or excuse Unico's failure to exercise before the vessels were rechartered.

business was established and operating for a definite period and the profits can be proven with reasonable certainty).

The majority acknowledged this "reasonable certainty" requirement. Award at 70. Yet the majority (without explanation) then disregarded this well-established principle in favor of unfounded conclusory statements to award damages for the unexercised option periods to a company with a history of operational struggles. Award at 83-85. This conjecture cannot serve as a basis for such damages. *Schiller v. N.Y. City Tr. Auth.*, 300 A.D.2d 296, 296-97 (2d Dep't 2002).

"[A] new business seeking to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty." *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986). Unico had been operating for a limited time, had experienced financial difficulties, had already returned one vessel in violation of the BCs, and had never demonstrated that it would have exercised all six option periods; each option required an independent business decision based on then-current market conditions. This does not meet the stricter standard requirement for lost profits established by *Kenford*. Other than acknowledging the reasonable certainty requirement and the Panel's obligation to comply with the same (*see* Unico Br. at 15, 16), Unico provides no explanation or evidence for how it was reasonably certain Unico would continue operating and exercise the additional options. Unico also fails to cite any case law to counter the well-established principle that damages for unexercised option periods are inherently speculative. *See* JMB Br. [Dkt. No. 5] at 20; Unico Br. at 14-16.

This is manifest disregard: acknowledging the legal standard requiring "reasonable certainty" and then consciously refusing to apply it, instead awarding three years of speculative damages based on conjecture that Unico "would have" exercised options it never actually exercised. Award at 70. Arbitrator Tsimis correctly characterized this approach as "far more

speculative, remote, and simply 'a bridge too far' in the context of the two BCs in question." Award at 84.

For these reasons, the ATB 205 and ATB 220 Awards must be vacated for manifest disregard of clearly governing law.

## C. The Panel Demonstrated Evident Partiality in Favor of Unico

### 1. The Standard for Evident Partiality

The Federal Arbitration Act provides that an arbitration award may be vacated "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). In the Second Circuit, "evident partiality… will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp.*, 748 F.2d at 84. The party challenging the award must prove evident partiality by clear and convincing evidence. *See Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs.*, 892 F.3d 501, 505 (2d Cir. 2018).

Proof of actual bias is not required. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). A conclusion of partiality "can be inferred from objective facts inconsistent with impartiality." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (quotations and citations omitted). Courts require "something more than the mere appearance of bias" to vacate an award but will not countenance a standard as insurmountable as "proof of actual bias." *Morelite*, 748 F.2d at 83-84.

Unico argues that "adverse rulings, differential outcomes, or disagreement with an arbitrator's reasoning do not constitute evident partiality." Unico Br. at 16. This is true as a general proposition, but it does not describe JMB's claim. JMB does not merely disagree with the Panel's rulings; JMB challenges the Panel's systematic application of different legal standards to nearly identical contractual provisions depending on which party benefited from strict enforcement.

14

Unico further contends that evident partiality requires "objective evidence of bias extrinsic to the arbitral decision-making process—such as an undisclosed relationship, financial interest, or other improper incentive." Unico Br. at 17. While undisclosed relationships are the most common basis for evident partiality findings, the Second Circuit has never held that extrinsic evidence is the exclusive basis for such claims. To the contrary, the *Morelite* court established that "evident partiality" will be found "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." 748 F.2d at 84. This standard focuses on the objective reasonableness of the conclusion, not on the particular type of evidence supporting it. Where, as here, the arbitral record itself demonstrates that the Panel applied diametrically different standards to identical contractual provisions, strictly enforcing notice requirements against one party while excusing identical requirements for the other, a reasonable person could conclude that the Panel was partial to the favored party.

### 2. The Panel's Asymmetric Application of Contractual Standards Demonstrates Partiality

The Panel strictly enforced contractual notice requirements against JMB (finding JMB's termination notices defective and therefore "wrongful") while simultaneously disregarding Unico's acknowledged failure to provide written notice for option periods 2 through 6. This differential treatment is not mere contract interpretation; it is the systematic application of different standards to identical contractual requirements depending on which party benefits.

When analyzing JMB's termination notice under Clause 20, the Panel emphasized that "withdrawal of a vessel/termination of a charter is a dramatic event ending an agreed venture" and that "charter party provisions and requirements concerning it are typically strictly enforced." Award at 63. The Panel held that "the language of Clause 20 is unambiguous and clear" and that JMB was required to provide written notice before exercising its right to terminate, withdraw and

15

repossess the vessels. Award at 63-64. Finding that JMB's October 5, 2021 letter did not satisfy this requirement, the Panel concluded that even though Unico was in default for failure to pay hire "JMB's termination of the BC was improper and wrongful." Award at 64; Foley Decl., Ex. 6 [Dkt. No. 4-7].

Yet when analyzing Unico's identical failure to comply with Clause 5(c)'s equally unambiguous written notice requirement for exercising option periods, the majority abandoned strict enforcement entirely. Rather than requiring Unico to comply with the contract's clear terms, the majority excused noncompliance as "unrealistic to expect, much less require." Award at 70. This is partiality.

### 3. The Disparate Treatment Cannot Be Reconciled with Neutral Adjudication

The Panel's disparate treatment of materially identical provisions cannot be reconciled with neutral adjudication. Both Clause 20 (termination) and Clause 5(c) (option exercise) required written notice as a condition precedent. Both clauses were unambiguous. Both parties did not fulfill required notices in certain instances.[3] Yet the Panel applied strict enforcement only when doing so benefited Unico and relaxed (or waived) enforcement only when strict application would have defeated Unico's claims. Unico attempts to justify this differential treatment by arguing that "the circumstances were different", specifically, that JMB's termination and repossession of the vessels created a different "factual posture" warranting different treatment. Unico Br. at 18. But if "changed circumstances" following termination excused Unico's failure to provide option notices, they should equally have excused JMB's alleged notice deficiencies after payment default by Unico, which occurred in the context of Unico's repeated breaches. The Panel did not apply a neutral principle that yielded different results based on different circumstances; it applied strict enforcement to JMB while excusing identical conduct by Unico. Moreover, the factual premise of

---

[3] JMB did send a notice, but the Panel deemed it insufficient. Unico never sent any notice on option periods 2-6.

Unico's argument is demonstrably false. Unico successfully exercised its first option after JMB terminated the BCs and repossessed the vessels, and after arbitration commenced. Award at 81-82. The Panel relied upon the same justification for awarding damages for the first option period. Award at 69-71. The "changed circumstances" that allegedly made it "unrealistic" to expect Unico to provide notices for options 2-6 had already occurred when Unico provided notice for option 1. If those circumstances did not prevent Unico from exercising the first option, they cannot justify excusing Unico's failure to exercise options 2-6.

This asymmetry is evident in the Panel's own reasoning. The Panel justified strict enforcement against JMB by observing that termination (in light of Unico's continuous breaches of the Bareboat Charters) "is a dramatic event" warranting close adherence to contractual requirements. Award at 63. But exercise of an option (which extends the charter term by six months and imposes substantial financial obligations) is equally "dramatic" for both parties. The Panel offered no principled basis for applying different standards to these equivalent contractual conditions.

Moreover, the Panel's excuse for Unico's noncompliance (that it would be "unrealistic" to expect Unico to provide notices after JMB repossessed the vessels) is factually unsupportable. As Arbitrator Tsimis observed in dissent, Unico successfully exercised the first option period on November 12, 2021, *after* JMB had terminated the BCs and *after* the arbitration had commenced. Award at 81-82; *see also* Foley Decl., Ex. 7 [Dkt. No. 4-8]. If Unico could exercise the first option under those circumstances, it could have done so for options 2 through 6.

### 4. The Pattern of Decision-Making Compels a Finding of Partiality

A reasonable observer examining the Award would have to conclude that the Panel applied one set of rules when enforcing the contract would benefit Unico and a different set of rules when enforcement would favor JMB. This is precisely the type of systematic favoritism that the evident

partiality standard addresses. In *Morelite*, the Second Circuit held that evident partiality exists "where a reasonable person would have to conclude that an arbitrator was partial to one party." 748 F.2d at 84. The court emphasized that in "assessing a given relationship, courts must remain cognizant of peculiar commercial practices and factual variances" and that "a totally unnecessary relationship between arbitrator and party may heighten" scrutiny. *Id.* Here, the "relationship" is not a personal or financial connection but a pattern of decision-making that systematically favors one party over the other.

Unico argues that courts have "rejected attempts to string together adverse rulings and relabel them as 'systematic partiality.'" Unico Br. at 18. But JMB does not merely point to adverse rulings; rather, JMB identifies a specific pattern in which the Panel applied diametrically opposite standards to materially identical contractual provisions. This is not disagreement with the Panel's conclusions; it is evidence that the Panel was not applying neutral legal principles. The Panel applied inconsistent legal standards depending on which party stood to benefit. The Second Circuit has recognized that evident partiality may be inferred from "objective facts inconsistent with impartiality." *Scandinavian Reinsurance*, 668 F.3d at 72. Here, the objective fact is that the Panel strictly enforced an unambiguous notice requirement against JMB while excusing Unico's violation of an equally unambiguous notice requirement. This asymmetric application of identical legal standards is an objective fact inconsistent with impartiality.

### 5. *Unico's Response Fails to Address the Asymmetry*

Unico's opposition contends that "[t]he fact that the Panel enforced contractual provisions strictly in some contexts and interpreted their operation differently in others does not support an inference of bias; it reflects the exercise of arbitral judgment." Unico Br. at 18. But this mischaracterizes JMB's argument. JMB does not challenge the Panel's "interpretation" of

18

different provisions; rather, JMB challenges the Panel's application of different *standards* to identical provisions.

The notice requirement in Clause 5(c) is not materially different from the notice requirement in Clause 20. Both require written notice as a condition precedent to the exercise of contractual rights. Both are unambiguous. The only difference is which party benefits from strict enforcement. When strict enforcement benefited Unico, the Panel applied it. When strict enforcement would have defeated Unico's claims, the Panel abandoned it.

Unico's argument that the Panel's reasoning "reflects engagement with the parties' arguments, consideration of the evidence, and reasoned application of the governing contracts and legal principles" ignores the fundamental inconsistency in the Panel's approach. Unico Br. at 18. A panel that strictly enforces notice requirements against one party while excusing identical requirements for the opposing party is not engaged in "reasoned application" of legal principles; it is engaged in result-oriented decision-making that favors one side. For these reasons, the ATB 205 and ATB 220 Awards must be vacated for evident partiality under FAA § 10(a)(2).

## D. JMB's Public Policy Concerns Remain Valid Despite Unico's Arguments

### 1. Public Policy Supports JMB's Statutory Grounds for Vacatur

Unico argues that JMB's public policy arguments must fail because the FAA provides the exclusive grounds for vacatur. Unico Br. at 19-20. JMB does not contend that public policy independently supplies a ground for vacatur outside the FAA's framework. Rather, JMB's public policy arguments reinforce its claims that the Panel exceeded its authority pursuant to § 10(a)(4) and acted in manifest disregard of the law. Public policy violations may support vacatur where they demonstrate that arbitrators exceeded their authority. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987). JMB's arguments satisfy this standard: they are grounded in

19

clearly established contract law principles that contractual liability does not extend to periods for which no binding agreement existed.

### 2. The Award Violates Established Contract Law Principles

Well-established contract law holds that an option does not create a binding obligation unless and until it is timely and properly exercised. *See Kingsbridge Med. Ctr., P.C. v. Hill*, 357 F. Supp. 2d 754, 759 (S.D.N.Y. 2005). The majority effectively converts Unico's unilateral options into a one-sided guaranteed revenue stream (where no associated liability was assumed by Unico), creating contractual rights Unico never acquired through performance of the contract's express conditions. Award at 70. As New York courts have recognized, if an arbitrator imposes obligations "not supported by any reasonable construction of the [contract], the arbitrator has, in effect, created a new contract for the parties," which constitutes grounds for vacatur. *In re Livermore-Johnson (N.Y.S. Dep't of Corr. & Cmty. Supervision)*, 155 A.D.3d 1391, 1393 (3d Dep't 2017).

The Award converts an unexercised unilateral option into a guaranteed multi-year revenue stream, a result inconsistent with foundational contract principles limiting recovery to rights actually acquired under the contract. Options to extend are ubiquitous features of charter parties, existing to promote commercial flexibility. Treating unexercised option periods as fixed contractual terms fundamentally alters the risk allocation embedded in such agreements and would force equipment owners to eliminate renewal options or sharply increase base-term pricing to insure against phantom future liability.[4]

### 3. Unico's Response Fails to Address JMB's Public Policy Concerns

Unico contends that JMB's public policy arguments amount to "speculative assertions" about future contracting behavior. Unico Br. at 19. This mischaracterizes JMB's position. JMB

---

[4] Asset owners will not accept a situation where a lessee can claim damages for periods where it has not committed to pay rent. It creates a one-sided relationship; asset owners will simply insist on long term contracts, and many lessees will be unable to commit to such a long-term liability.

relies on the concrete, well-established legal principle that contractual liability does not extend to periods for which no binding agreement existed, a principle "ascertained by reference to the laws and legal precedents," precisely the standard *United Paperworkers Int'l Union*, mentioned *supra*, requires.

Unico notes that JMB cited *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354 (1976), and *Sprinzen v. Nomberg*, 46 N.Y.2d 623 (1979), which arise under the CPLR rather than the FAA. But these cases are illustrative, demonstrating that New York recognizes limits on arbitral authority when awards violate strong public policy. As *Sprinzen* recognized, "an award which is violative of public policy will not be permitted to stand." 46 N.Y.2d at 630.

The Award imposed damages for contract periods that never came into existence, converting a unilateral privilege into a guaranteed revenue stream. Award at 70, 85. This conflicts with the public policy against awarding damages that place a claimant in a better position than performance would have provided. *See Interfilm, Inc. v. Advanced Exhibition Corp.*, 249 A.D.2d 242 (1st Dep't 1998). Unico's actual history of performance under the BCs reflected a lack of profitability, not the perfect performance and substantial profit as forecasted by the majority's damages award.

For these reasons, JMB's public policy concerns (which reinforce its statutory grounds for vacatur) remain valid.

## E. The Court Should Deny Unico's Cross-Petition to Confirm the ATB 205 and ATB 220 Awards

Unico's Cross-Petition seeks confirmation of the ATB 205 and ATB 220 Awards in their entirety. For the reasons set forth above, those Awards should be vacated, not confirmed.

### *1. Confirmation Is Not Mandatory Where Grounds for Vacatur Exist*

Under Section 9 of the FAA, a court "must grant" an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." This statutory language makes clear that the duty to confirm is conditioned on the absence of valid grounds for vacatur. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) ("Under the terms of § 9, a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11.").

Confirmation proceedings are "summary proceeding[s] that merely make[] what is already a final arbitration award a judgment of the court." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). But this summary nature presupposes that the award is valid and enforceable. Where, as here, a party has demonstrated that the award falls within one or more of the FAA's grounds for vacatur, the court may not confirm the award.

### *2. JMB Has Demonstrated Multiple Grounds for Vacatur*

As demonstrated in the preceding sections of this memorandum, JMB has established that the ATB 205 and ATB 220 Awards must be vacated on multiple independent grounds.

First, the Panel exceeded its powers by awarding damages for option periods that were never exercised. 9 U.S.C. § 10(a)(4). The Panel acknowledged that Unico failed to provide the written notice required by Clause 5(c) for option periods 2 through 6 yet awarded damages for all six option periods based on the majority's subjective and speculative view that Unico "would have" exercised the options and that requiring notice would be "unrealistic." Award at 70. This was not contract interpretation; it was contract rewriting that exceeded the Panel's authority.

Second, the majority reflects manifest disregard of clearly governing law. The majority was aware of the contractual requirement that Unico provide written notice to exercise each option;

22

acknowledged Unico's noncompliance; and then consciously refused to apply the requirement, citing no legal authority.

Third, the Panel demonstrated evident partiality by applying asymmetric standards to identical contractual provisions, strictly enforcing notice requirements against JMB while excusing Unico's identical noncompliance. 9 U.S.C. § 10(a)(2).

### 3. Unico's Arguments Do Not Overcome JMB's Showing

Unico's opposition relies primarily on the deferential standard of review and characterizes JMB's petition as an impermissible "merits review." Unico Br. at 1, 3-4. But JMB's challenge is not about whether the Panel correctly interpreted the BCs; it is about whether the Panel had authority to award damages for option periods that were never exercised and for which no valid contract existed. Unico's invocation of the deferential standard misapprehends its purpose. The FAA's narrow grounds for vacatur reflect a policy judgment that parties who agree to arbitration should generally be bound by the arbitrator's resolution of their dispute. But that policy presupposes that the arbitrator operates within the bounds of the parties' agreement and applicable law. Where, as here, an arbitrator acknowledges unambiguous contractual requirements, recognizes a party's failure to comply with those requirements, and then awards damages as if the requirements did not exist, the deferential standard is not a shield against vacatur; it is overcome because the arbitrator has exceeded the bounds of legitimate interpretation.[5]

The FAA's narrow grounds for vacatur exist precisely to address situations where arbitrators exceed the bounds of their authority. The deferential standard does not require courts to confirm awards that exceed arbitrators' powers, manifest disregard of governing law, or reflect evident partiality. *See Stolt-Nielsen S.A.*, 559 U.S. at 670-72; *Oxford Health Plans LLC v. Sutter*,

---

[5] Unico's argument effectively renders this Court an mere "rubber stamp" no matter how improper an arbitration ruling may be. Unico's basic assertion is that federal courts should have no power to review arbitration decisions.

569 U.S. 564, 569 (2013). Where the movant satisfies one or more of these grounds, confirmation must be denied.

Unico's argument that the Panel was "even arguably construing or applying the contract" ignores that the Panel did not construe the notice provisions; it disregarded them entirely. Unico Br. at 5-6. The Panel acknowledged that Clause 5(c) required written notice; acknowledged that Unico did not provide notice for options 2-6; and then declared that enforcing the notice requirement would be "unrealistic." Award at 70. That is not construction or application of the contract; it is refusal to enforce the contract's express terms. *See ReliaStar Life Ins. Co.*, 564 F.3d at 86. The "even arguably construing" standard from *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) and its progeny requires that the arbitrator's decision have some basis in the parties' agreement. An arbitrator who acknowledges an unambiguous contractual requirement and then declares it unenforceable based on subjective views of practicality is not "construing" the contract in any meaningful sense. As *Stolt-Nielsen* recognized, when arbitrators "simply impose[] [their] own conception of sound policy," they exceed their authority regardless of whether they purport to be interpreting the contract. 559 U.S. at 675-76.

For these reasons, Unico's Cross-Petition to confirm the ATB 205 and ATB 220 Awards must be denied.

## F. The ATB 284 Award Should Be Confirmed and the Clerical Error Corrected

### 1. Both Parties Agree That the ATB 284 Award Should Be Confirmed

JMB respectfully requests that the Court correct a clerical error in the ATB 284 Award. The Award erroneously identifies "Unico" instead of "JMB" as the recipient of interest and attorney's fees awarded in connection with the ATB 284 damages. Both parties acknowledge this scrivener's error.

24

Section 11(a) of the FAA provides that a court may modify or correct an arbitration award "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). The clerical error here is precisely the type of "evident material mistake in the description of any person" that § 11(a) authorizes courts to correct. Unico does not oppose correction of this error. Accordingly, the Court should confirm the ATB 284 Award and correct the clerical error by inserting "JMB" instead of "Unico" as the recipient of interest in the amount of $146,660.46 and reasonable attorney's fees and expenses in the amount of $380,000.00

## **CONCLUSION**

For the foregoing reasons, JMB respectfully requests that the Court enter an order:

(1) Granting JMB's Petition to Vacate in Part the Arbitration Awards to the extent it awards Unico damages for unexercised option periods 2 through 6 and denying Unico's Cross-Petition to Confirm the Awards;

(2) Confirming the ATB 284 Award in favor of JMB and against Unico in the amount of $512,112.00 in damages, together with interest in the amount of $146,660.46 and reasonable attorney's fees and arbitral expenses in the amount of $380,000.00;

(3) Correcting the clerical error in the ATB 284 Award pursuant to 9 U.S.C. § 11(a) by inserting "JMB" instead of "Unico" as the recipient of interest and attorney's fees; and

(5) Granting JMB such other and further relief as the Court deems just and proper.


Dated: New York, New York                    Respectfully submitted,

February 27, 2026                            HOLLAND & KNIGHT LLP


                                             /s/ Vincent J. Foley
                                             Vincent J. Foley
                                             Marie E. Larsen


25

HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, NY 10019
Telephone: (212) 513-3200
E-mail: vincent.foley@hklaw.com
E-mail: marie.larsen@hklaw.com

*Attorneys for Petitioners JMB Shipping ATB 205, LLC, JMB Shipping ATB 220, LLC, and JMB Shipping ATB 284, LLC*

26

## WORD COUNT CERTIFICATION

I hereby certify that this Memorandum of Law in opposition to Respondent Unico Marine Services LLC's Cross-Petition to Confirm and Reply in Further Support of JMB's Petition to Vacate the Arbitration Award complies with Local Civil Rule 7.1(c) word count limit. In determining compliance, I relied on the word count function of the word processing system used to prepare this document. The total number of words in this Memorandum of Law exclusive of the caption, table of contents, table of authorities, signature block, and required certificates is 7,837 words.

Dated: New York, New York
February 27, 2026

/s/ Vincent J. Foley
Vincent J. Foley

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of February 2026, I caused a true and correct copy of the foregoing Memorandum of Law to be filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record who are registered ECF users, and such filing constitutes service pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Civil Rule 5.2.

Kevin J. Lennon
Patrick F. Lennon
Lennon, Murphy & Phillips, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170

*Attorneys for Respondent Unico*
*Marine Services LLC*

*/s/ Vincent J. Foley*
Vincent J. Foley