UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JMB SHIPPING ATB 205, LLC, JMB SHIPPING ATB 220, LLC, and JMB SHIPPING ATB 284, LLC,<br><br>                Petitioners,<br><br>       - v -<br><br>UNICO MARINE SERVICES LLC,<br><br>               Respondent. | Civil Action No. 1:26-cv-00416 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## <u>CROSS PETITION TO CONFIRM ARBITRATION AWARD</u>

LENNON, MURPHY & PHILLIPS, LLC
The Gray Bar Building
420 Lexington Ave. Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax

## I.      Introduction

JMB's latest submission (ECF No. 19) does not change the posture of this case. It asks the Court to do what the FAA forbids: re-weigh the evidence and substitute its own view of the Bareboat Charters and damages for the Panel's. The Final Award is lengthy and reasoned, squarely addresses the notice, option, and damages issues, and reflects an arbitration panel acting well within the authority conferred by the parties' broad arbitration agreements. Under the FAA and controlling Second Circuit precedent, JMB's repackaged arguments under § 10(a)(4), manifest disregard, and evident partiality do not supply a basis for vacatur. This reply addresses JMB's opposition to Unico's cross-petition to confirm and, as necessary, responds to those arguments in ECF No. 19 that JMB itself advances as reasons to deny confirmation. Unico's cross-petition to confirm should be granted in full.

## II.     The FAA's Strict Limits on Review Remain Dispositive

The FAA directs that a court "must confirm" an arbitration award unless the party opposing confirmation establishes one of the statute's narrow grounds for vacatur.[1] *See* 9 U.S.C. §§ 9–10 (cited in both parties' briefs). JMB continues to bear a "heavy burden" to avoid confirmation, and Second Circuit authority emphasizes that judicial review is "severely limited," "highly deferential," and "among the narrowest known to the law." *See, e.g.*, Unico Br. at 2–4 (discussing the standard and quoting from Second Circuit authority), ECF No. 16 ; JMB Br. at 3 (recognizing that the FAA provides "narrow" grounds for vacatur), ECF No. 19.

---

[1] JMB's brief (ECF No. 19) is styled as both a reply in further support of its petition to vacate and an opposition to Unico's cross-petition to confirm, and substantially exceeds the usual 3,500-word limit for reply briefs under the Local Rules. Unico confines this reply to issues necessary to support confirmation and to respond to arguments in JMB's brief that JMB expressly advances as grounds for denying confirmation.

As Unico has already explained, an arbitral award must be confirmed so long as the arbitrators were even arguably construing or applying the contract and acting within the scope of their authority, and there exists at least a barely colorable justification for the result. Unico Br. at 2–3, ECF No. 16. JMB identifies no new statutory ground; it simply re-labels the same merits disagreements over Clause 5(c), the effect of JMB's termination and re-charter, and the quantum of lost-earnings damages as exceeded powers, manifest disregard, and public policy.

## III.    The Panel Did Not Exceed Its Powers Under § 10(a)(4)

### A.    The Panel Had Authority To Decide Options and Damages

The arbitration clauses in the Bareboat Charters contain no carve-out that would exclude option-period disputes or damages from arbitral jurisdiction. *See* Award at 19–20 (reproducing Clause 24), ECF No. 4-2; Unico Br. at 5–7, ECF No. 16. The Bareboat Charters themselves give Unico options to extend the charters for successive six-month periods at specified hire rates, subject to timely notice under Clause 5(c). Award at 15–16, ECF No. 4-2. These options are not separate, future contracts; they are integral mechanisms within the Bareboat Charters governing continuation of the same charter relationships. Disputes over whether Unico exercised those extension options, or whether JMB's conduct prevented or rendered futile their exercise, therefore arise directly from the Bareboat Charters and fall squarely within the broad arbitration clause.

JMB's own papers acknowledge that it submitted to the Panel the questions whether its terminations were effective, whether Unico's option notice was valid, and whether Unico could recover lost earnings beyond the base term. JMB Br. at 4–11, ECF No. 19. JMB never argued that the Panel lacked authority to decide those issues; it affirmatively asked the Panel to hold that Unico's failure to give notices for options 2–6 meant that no contract existed for those periods and thus no damages were recoverable. JMB Reply at 7–8, ECF No. 19. JMB cannot now contend, in

[1]

its opposition to the motion to confirm the Award that the arbitrators exceeded their authority in issuing the very decision it asked them to make.

The Panel did exactly what the parties asked it to do: it interpreted the Bareboat Charters, decided which notices were effective and when, determined whether JMB's conduct prevented further performance, and awarded damages it found had been proven on the record. Award at 63–73, ECF No. 4-2. Its conclusion that the charters, with their embedded extension options, supported lost-earnings recovery through options 2–6 is contract interpretation, and not, as JMB now attempts to argue, the creation of a new agreement.

Under the Second Circuit's § 10(a)(4) case law, that ends the inquiry. Where the parties have agreed to broad arbitration clauses and the disputed issues fall within those clauses, a court's function "is not to decide whether the arbitrator construed the parties' contract correctly, but whether the arbitrator acted within the scope of his authority." Unico Br. at 5–7 (summarizing and quoting *Banco de Seguros and T.Co Metals, LLC v. Dempsey Pipe Supply, Inc.*). JMB does not—and cannot—point to any contractual limitation that the Panel transgressed.

### B. JMB Mischaracterizes Interpretation as "Nullification"

The heart of JMB's § 10(a)(4) argument is that the Panel "waived" Clause 5(c) and simply declared the notice requirement "unrealistic." JMB Reply at 4–7, ECF No. 19. But the Final Award shows that the majority did not ignore or nullify Clause 5(c) at all; instead, it quoted the provision, acknowledged Unico's non-compliance for options 2–6, and then interpreted how that requirement operated in light of JMB's own misconduct.

The majority found:

- Clause 5(c) requires 45 days' written notice to exercise each option. Award at 15–16, ECF No. 4-2.

[2]

- Unico gave notice for the first option post-termination, which the majority held effective. Award at 67, 81–82, ECF No. 4-2.

- JMB then re-chartered the vessels to Centerline in November-December 2021, making further notices unrealistic. Award at 69-72, ECF No. 4-2.

The majority then reasoned that, given JMB's improper termination and subsequent re-charter of the vessels, it was "unrealistic to expect, much less require, Unico to provide notices to exercise options 2 through 6," and that JMB could not rely on non-occurrence of those notices to cut off Unico's damages. Award at 70–72, ECF No. 4-2. That reasoning is, in substance, an application of prevention and futility principles to the notice requirement—not a decision to pretend Clause 5(c) does not exist.

JMB insists that because the majority did not cite a case name or use the word "prevention," it failed to apply the law. But § 10(a)(4) does not require arbitrators to write like appellate courts or affix doctrinal labels; it requires only that they *arguably construe* the contract. It is enough that the Panel took Clause 5(c) seriously, grappled with the timeline, and explained why JMB's own misconduct precluded it from insisting on literal compliance for later options.

### C.    The Dissent Confirms the Panel Was Construing the Contract

Arbitrator Tsimis's Partial Dissent underscores that the Panel was engaged in the very sort of contractual construction that is insulated from § 10(a)(4) review. Mr. Tsimis agreed with the majority on major liability issues, including JMB's improper termination, but would have limited Unico's lost-profits recovery to the base term and first option period, reasoning that "without [Clause 5(c)] notice, there is no valid contractual predicate" for damages in later periods and describing the majority's approach as "a bridge too far." Award at 81–86, ECF No. 4-2.

[3]

The existence of that dissent squarely proves that the Panel confronted the precise legal question that JMB raises now, debated it internally, and reached a majority view. Under Second Circuit authority cited in both sides' briefs, such debate is the opposite of "excess of powers." See, e.g., Unico Br. at 5–7 (discussing *ReliaStar* and *Banco de Seguros*); JMB Br. at 13–17 (acknowledging that § 10(a)(4) does not permit review of whether an arbitrator misconstrued a contract), ECF No. 19. JMB effectively asks this Court to prefer the dissent's contract interpretation over the majority's. Section 10(a)(4) does not allow that.

### D.    JMB's "No Contract" Theory Is a Merits Argument

JMB argues that because Unico never exercised options 2–6, "no contract existed for those periods," and therefore the Panel had "no authority to create contractual obligations." JMB Reply at 7–8 (citing *East Coast Resource*), ECF No. 19. This is simply another way of arguing that the Panel read the Bareboat Charters incorrectly, not a genuine jurisdictional objection.

The options at issue were options to extend the existing Bareboat Charters—the same three agreements that JMB concedes were submitted to arbitration. Award at 15–16. Whether those options were exercised, or whether JMB's misconduct prevented or excused their exercise, is a contract-interpretation question the parties submitted  to the Panel. JMB itself urged the Panel to conclude that the absence of timely notices for options 2–6 meant no contractual predicate existed for damages in those periods. JMB Reply at 7–8, ECF No. 19. The majority disagreed, reasoning that JMB's termination and re-charter prevented Unico from exercising the options and that Unico's entitlement to lost earnings for those periods survived. Award at 69–73, ECF No. 4-2.

That dispute—over the legal effect of non-exercise in light of JMB's breach—is a quintessential merits question within the Panel's mandate. JMB's reliance on *East Coast Resource*, does nothing to change this result. That case states the uncontroversial proposition that contract

[4]

damages require a valid contract; it does not say that an arbitrator lacks power to decide, as a matter of contract interpretation and prevention doctrine, whether a concededly existing contract (here, the bareboat charters with embedded extension options) supports damages into future periods.

## IV.    JMB Cannot Meet the Manifest-Disregard Standard

### A.    The Standard Remains Extremely Narrow

Both sides acknowledge that manifest disregard is a judicial gloss on § 10(a) and available only in rare instances. JMB Reply at 8, ECF No. 19; Unico Br. at 3–4, ECF No. 16. JMB must show that the Panel knew of a clearly governing, explicit rule and consciously chose to ignore it; misapplication of law or factfinding errors do not suffice. JMB Reply at 8–9, ECF No. 19; Unico Br. at 3–4, ECF No. 16.

### B.    Notice/Options: The Panel Applied, Rather Than Ignored, Governing Principles

The award itself refutes that characterization. As summarized above, the majority:

- Quoted Clause 5(a)–(c) and recognized that this created formal notice conditions for the base term and each option period. Award at 15–16, ECF No. 4-2.

- Found Unico's first option notice effective even though it was given after JMB's attempted termination and arrest, while JMB had possession of the vessels. Award at 67, 69–71, 81–82, ECF No. 4-2.

- Treated JMB's subsequent re-charter to Centerline as the key change in circumstances and explained why, once JMB had placed the vessels beyond Unico's reach, further notices would have been "unrealistic" to expect. Award at 69–72, ECF No. 4-2.

JMB's reply asks the Court to treat the majority's prevention/futility reasoning as if it were an express refusal to apply Clause 5(c). But manifest disregard requires proof that the arbitrators *knew* the law and *decided not to follow it*. The majority did not say "Clause 5(c) does

not matter." It said, in substance, that JMB's own misconduct in breach the Bareboat Charters and re-chartering the vessels meant Unico's omission in sending additional notices[2] could not be used to defeat damages. That is application—albeit application JMB contests—not disregard.

### C.    Lost Earnings: Application of "Reasonable Certainty," Not Its Rejection

JMB's damages-based manifest-disregard theory fares no better. JMB emphasizes New York's requirement that lost earnings be proven with "reasonable certainty" and argues that, especially for a new business, damages for unexercised options are too speculative as a matter of law. JMB Reply at 12–13 (relying on the same authorities cited in its opening brief, and which it argued to the arbitrators), ECF No. 19.

But here again, the majority did not ignore those principles; it discussed them. The award expressly notes the reasonable-certainty requirement and the Panel's obligation to apply it. Award at 70, ECF No. 4-2. It then reviewed the record—including Unico's testimony about its intent to continue exercising options and the parties' competing expert analyses—and concluded that the standard was satisfied for options 2–6. Award at 70–73, 83–85, ECF No. 4-2. JMB vigorously disputes that conclusion and stresses that Unico was a start-up with losses and had already returned one vessel. JMB Reply at 12–13, ECF No. 19. However, those points were fully aired in the arbitration and are reflected in the dissent. Award at 81–86, ECF No. 4-2.

Under the narrow manifest-disregard standard, what matters is that the Panel identified and applied the governing rule to the facts, not whether the Court would have weighed the evidence differently or reached a different result. As Unico's opposition explains,[3] Second Circuit precedent

---

[2] JMB treated the Bareboat Charters as terminated, did not recognize Unico's option notices as effective, and instead bareboat-chartered the 205 and 220 to third party, thereby making it impossible to perform for Unico.

[3] Unico Br. at 10–15, ECF No. 16.

[6]

does not permit vacatur merely because a court believes the arbitrators required too much or too little proof of lost earnings; disagreements with the Panel's assessment of evidence or damages go to factual and discretionary judgments, not to manifest disregard of clearly governing law.

## V.    JMB's Evident-Partiality Claim Is Unsupported

### A.    JMB Relies Solely on So-Called "Asymmetry" in Reasoning

JMB refines its evident-partiality argument to focus on what it styles as so-called "asymmetric" enforcement of notice: strict application of the written-notice requirement against JMB under Clause 20 (termination and withdrawal), and leniency for Unico under Clause 5(c) (options). JMB Reply at 14–18, ECF No. 19. JMB asserts that this pattern, plus the dissent, shows that the majority somehow "favored" Unico.

Crucially, JMB again identifies no undisclosed relationships, financial interests, or other extrinsic facts that would support a bias inference under Second Circuit law. Instead, it relies entirely on its own self-serving disagreement with the majority's reasoning and outcomes. This is plainly insufficient to establish evident partiality.

### B.    The Record Contains Significant Rulings Adverse to Both Parties

The award's procedural and merits history is also inconsistent with JMB's insinuation of one-way favoritism. The Panel:

- Issued adverse spoliation-related rulings against JMB concerning the ATB 205 pump-can casing and the missing logbook, including finding that JMB's failure to preserve the logbook was "unreasonable" and authorizing consideration of adverse inferences against JMB when deciding the merits. Award at 10–11 (summarizing the July 7, 2023 application and September 11, 2023 ruling), ECF No. 4-2.

[7]

- Denied JMB's request to exclude Unico's Appendices 1–3 from the record while still allowing JMB to make a supplemental submission on prejudice. Award at 12–13, ECF No. 4-2.

- Rejected various other requests by each side. Award at 2–14, ECF No. 4-2.

On the merits, the Panel also ruled against Unico on several issues, including rejecting some of its seaworthiness and defect theories and resolving aspects of mitigation and damages in JMB's favor. Award at 55–62, ECF No. 4-2. The overall pattern reflect a Panel that scrutinized the conduct of both parties and did not hesitate to fault JMB where the record warranted it.[4]

### C.    Reasoning Asymmetry Does Not Equal "Evident Partiality"

Against that backdrop, JMB's contention that the Panel's different treatment of Clause 20 and Clause 5(c) proves "evident partiality" cannot be reconciled with controlling authority. JMB itself cites Second Circuit precedent holding that evident partiality exists only where a reasonable person "would have to conclude" that an arbitrator was partial. JMB Br. at 22–23 (quoting and discussing *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters* and *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 748 F.2d 79 (2d Cir. 1984)), ECF No. 19.

Those decisions also make clear that disagreements with an arbitrator's reasoning or the fact that a panel's decisions favor one side in some respects does not, standing alone, establish evident partiality. *See* Unico Br. at 16–18, ECF No. 16. JMB's argument boils down to this: the Panel demanded strict compliance from JMB under Clause 20, but concluded that JMB's own misconduct when it breached the Bareboat Charters and re-chartered the vessels prevented it from

---

[4] Nor does the record support JMB's insinuation that the majority was "out to get" JMB. If the Panel had been intent on favoring Unico, it could have substantially increased Unico's recovery by accepting more of Unico's contested damages theories on ATB 284, but it did not do so. Instead, the Award reflects a series of mixed rulings on liability, mitigation, and quantum across all three vessels, which is inconsistent with any suggestion of one-way bias.

invoking strict compliance under Clause 5(c). That is an allegation of inconsistent contract interpretation, but is not proof of bias.

Given the absence of extrinsic evidence and the presence of significant adverse rulings against JMB, JMB's evident-partiality theory does not meet the demanding Second Circuit standard and should be rejected.

## VI.    JMB's Public-Policy Arguments Add Nothing

JMB adds public-policy rhetoric, suggesting that allowing damages for option periods the exercise of which was determined to be futile, will distort commercial risk allocation, undermine contract certainty, and deter owners from offering option structures. JMB Reply at 19–21, ECF No. 19. Although none of these issues were ever raised or even suggested during the arbitration, JMB  then asks the Court to deny Unico's cross-petition to confirm on such a spurious basis.

JMB's public-policy contentions add nothing to its vacatur argument. Further, as JMB's own cited authorities recognize, public policy under the FAA is not an independent, free-floating ground to re-make an award; it must be rooted in explicit, well-defined norms and is typically considered as an overlay to the statutory grounds in § 10. JMB Br. at 23–25, ECF No. 19; Unico Br. at 18–20 (discussing *United Paperworkers Int'l Union v. Misco, Inc. and Garrity v. Lyle Stuart, Inc.*), ECF No. 16. JMB does not argue that the award enforces an illegal contract, violates a statutory command, or compels conduct that offends a clearly articulated public policy. It simply reiterates its narrow view that the Panel misread the Bareboat Charters and over-extended Unico's lost-earnings recovery—disagreements that go to the merits, not to any ground for vacatur.

Under *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), which both parties have cited, the FAA's vacatur grounds are exclusive, and the Court may not expand them to accommodate generalized concerns about "market effects" or "commercial expectations."

[9]

JMB's attempt to recast its merits objections as "public policy" therefore does not alter the statutory analysis or the strong presumption in favor of confirmation.

## VII.     The Award Should Be Confirmed in Full

For all of these reasons, JMB has not established any ground under § 10 of the FAA to vacate any portion of the Final Award. The Panel acted within its broad contractual mandate, carefully construed the Bareboat Charters, applied the governing legal principles it identified, and issued a detailed decision supported by a substantial record.

Unico respectfully requests that the Court:

1.  Deny JMB's petition to vacate the ATB 205 and 220 awards;

2.  Grant Unico's cross-petition to confirm the ATB 205 and 220 portions of the Final Award; and

3.  Confirm the ATB 284 award and correct the agreed clerical error under 9 U.S.C. § 11(a).

Dated: March 6, 2026
       New York, New York

LENNON, MURPHY & PHILLIPS, LLC

By:   *Parick F. Lennon*
      Patrick F. Lennon, Esq.
      Kevin J. Lennon, Esq.
      Steven R. Williams, Esq.
      420 Lexington Ave., Suite 300
      New York, NY 10170
      Phone: (212) 490-6050
      Fax:    (212) 490-6070
      Email: klennon@lmplaw.net
             plennon@lmplaw.net
             swinters@lmplaw.net

      *Attorneys for Respondent,*
      *UNICO MARINE SERVICES LLC*

[10]

**CERTIFICATION**

I hereby certify that on this 6th day of March, 2026, I caused a true and correct copy of the foregoing REPLY MEMORANDUM OF LAW to be filed electronically with the Clerk of the Court using the CM/ECF system.

Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record who are registered ECF users, and such filing constitutes service pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Civil Rule 5.2.

HOLLAND & KNIGHT LLP
787 Seventh Avenue
31st Floor
New York, New York 10019
Vincent J. Foley, Esq.([vincent.foley@hklaw.com](mailto:vincent.foley@hklaw.com))
Marie E. Larsen, Esq. (marie.larsen@hklaw.com)

*Attorneys for Petitioners*
*JMB Shipping ATB 205, LLC*
*JMB Shipping ATB 220, LLC*
*JMB Shipping ATB 284, LLC*

*/s/ Patrick F. Lennon*
Patrick F. Lennon

[11]

[12]

**CERTIFICATION OF WORD COUNT**

Pursuant to Local Civil Rule 7.1(d) of the United States District Court for the Southern District of New York, I hereby certify that this memorandum of law contains 3,254 words, exclusive of signature block, certification of service, and certification of word count. This word count was determined using the word-count function of Microsoft Word.

Dated: March 6, 2026
       New York, New York

*/s/ Patrick F. Lennon*
Patrick F. Lennon